CLINE-HANSON, INC., Plaintiff-Respondent-Petitioner,

v.

Dr. Edward J. ESSELMAN, Defendant-Appellant-Respondent,

SCHLAFER BUILDERS & REALTY, INC., and Home Savings & Loan Association, Defendants.

Supreme Court

*No. 80–1422. Argued April 26, 1982.—Decided June 2, 1982.*

(Also reported in 319 N.W.2d 829.)

For the plaintiff-petitioner there were briefs by *Steven L. Toney* and *Werner, Beyer & Lindgren, S.C.,* attorneys, of New London, and *Walter B. Raushenbush,* of Madison, of counsel, with oral argument by *Messrs. Toney* and *Raushenbush.*

For the defendant-respondent there was a brief by *Jonathan M. Menn* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* of Appleton, and oral argument by *Jonathan M. Menn.*

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which reversed a judgment of the circuit court for Outagamie county, GORDON MYSE,

Circuit Judge. The judgment was for the plaintiff in an action to foreclose a construction lien.

The defendant-respondent, Dr. Edward J. Esselman, is a dentist who owns three adjoining platted lots in the City of Appleton. He contracted with Schlafer Builders and Realty, Inc., to construct three buildings, one on each of the lots. Each building was to be located entirely upon its respective lot. One building consisted of two apartments, while the other two each consisted of three apartments, for a total of eight separate apartments on the three lots. Esselman and Schlafer entered into a single contract to cover all three buildings. The contract did not require that the costs of labor and materials be apportioned among the buildings. The materials were therefore supplied indiscriminately for all three buildings. Construction work took place simultaneously on all the buildings.

The plaintiff-petitioner, Cline-Hanson, Inc., entered into a single contract with Schlafer to install the hard floor coverings and carpeting in all eight apartments. The contract provided that the work done by Cline-Hanson on all three buildings would be for a single lump sum. No effort was made to divide the costs of labor or materials among the buildings. Cline-Hanson furnished the labor and materials between November, 1977 and February 7, 1978.

Cline-Hanson was not paid for its labor and materials. In January of 1979, it commenced this action against Dr. Esselman, Schlafer, and Home Savings and Loan Association, the financing agency. Cline-Hanson claimed a single lien covering all three of the lots owned by Dr. Esselman. Cline-Hanson did not give Dr. Esselman notice of its lien rights as provided for under sec. 289.02 (2), Stats. 1977.[1]

---

[1] Ch. 289, Stats., was renumbered as ch. 779 by the Laws of 1979. Sec. 289.02(2) provides in part:

"(2) NOTICE TO OWNER, LENDER AND MATERIALMAN. (a) Every prime contractor who enters into a contract with the owner for

Cline-Hanson contends that it was exempt from this notice requirement because of sec. 289.02(1)(c), Stats. 1977, which provides an exception to the notice require-

a work of improvement on the owner's land and who has contracted or will contract with any subcontractors or materialmen to provide labor or materials for the work of improvement shall include in any written contract with the owner the notice required by this paragraph, and shall provide the owner with a copy of the written contract. If no written contract for the work of improvement is entered into, the notice shall be prepared separately and served personally or by registered mail on the owner or his authorized agent within 10 days after the first labor or materials are furnished for the improvement by or pursuant to the authority of the prime contractor. The notice, whether included in a written contract or separately given, shall be in at least 8-point bold type, if printed, or in capital letters, if typewritten. It shall be in substantially the following language: 'As required by the Wisconsin construction lien law, builder hereby notifies owner that persons or companies furnishing labor or materials for the construction on owner's land may have lien rights on owner's land and buildings if not paid. Those entitled to lien rights, in addition to the undersigned builder, are those who contract directly with the owner or those who give the owner notice within 60 days after they first furnish labor or materials for the construction. Accordingly, owner probably will receive notices from those who furnish labor or materials for the construction, and should give a copy of each notice received to his mortgage lender, if any. Builder agrees to co-operate with the owner and his lender, if any, to see that all potential lien claimants are duly paid'.

"(b) Every person other than a prime contractor who furnishes labor or materials for an improvement shall have the lien and remedy under this subchapter only if within 60 days after furnishing the first labor or materials he gives notice in writing, in 2 signed copies, to the owner either by personal service on the owner or his authorized agent or by registered mail with return receipt requested to the owner or his authorized agent at his last-known post-office address. The owner or his agent shall provide a copy of the notice received, within 10 days after receipt, to any mortgage lender who is furnishing or is to furnish funds for construction of the improvement to which the notice relates. The notice to the owner shall be in substantially the following language, with blanks accurately filled in: 'As a part of your construction contract, your contractor or builder has already advised you that those who furnish labor or materials

ment when more than four "family living units" are provided by the improvement.[2]

for the work will be notifying you. The undersigned first furnished labor or materials on . . . (give date) for the improvement now under construction on your real estate at. . . . (give legal description, street address or other clear description). Please give your mortgage lender the extra copy of this notice within 10 days after you receive this, so your lender, too, will know that the undersigned is included in the job'.

"(c) If any prime contractor required to give the notice prescribed in par. (a) fails to give notice as required, he shall not have the lien and remedy provided by this subchapter."

However sec. 289.02(1)(c), Stats. 1977, provides:

"**Notice required to preserve lien rights; exceptions; saving clause; obligations of contractors.** (1) EXCEPTIONS TO NOTICE REQUIREMENT. The notice required to be given by lien claimants under sub. (2) shall not be required to be given in the following cases only: . . .

"(c) By any lien claimant furnishing labor or materials for an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement, if the improvement is wholly residential in character, or in any case where more than 10,000 total usable square feet of floor space is to be provided or added by such work of improvement, if the improvement is partly or wholly nonresidential in character."

[2] The notice required to preserve lien rights under sec. 289.02, Stats., is distinct from the pre-filing notice under sec. 289.06, Stats. 1977. Cline-Hanson did comply with the notice and filing requirements of sec. 289.06. Sec. 289.06 provides:

"289.06 **Filing claim and beginning action; notice required before filing; contents of claim document.** (1) No lien under sec. 289.01 shall exist and no action to enforce the same shall be maintained unless within 6 months from the date the lien claimant furnished the last labor or materials a claim for such lien is filed in the office of the clerk of circuit court of the county in which the lands affected thereby lie, and unless within 2 years from the date of filing a claim for lien an action is brought and summons and complaint filed therein. Such claim for lien may be filed and docketed, and action brought, notwithstanding the death of the owner of the property affected thereby or of the person with whom the original contract was made, with like effect as if he were then living.

A jury trial was held on the issue of damages. The jury returned a verdict that the value of the goods and services furnished by Cline-Hanson was $8,000. Cline-Hanson's motion for judgment on the verdict was opposed by Dr. Esselman on the ground that the construction in this case did not qualify under the notice exception in sec. 289.02(1)(c), Stats. On June 12, 1980, the circuit court granted Cline-Hanson's motion for judgment on the verdict. The court ruled that the term "family living unit" in sec. 289.02(1)(c) referred to an individual apartment rather than an entire building. Therefore, improvement in this case did encompass more than four units and Cline-Hanson was not required to give Dr. Esselman notice under sec. 289.02(2). On August 8, 1980, the court entered an order staying execution of the judgment pending appeal.

The court of appeals reversed the trial court's judgment. The court concluded that the exception to the

"(2) No lien claim may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim. The notice is required to be given whether or not the claimant has been required to and has given a previous notice pursuant to s. 289.02. Such notice shall briefly describe the nature of the claim, its amount and the land and improvement to which it relates.

"(3) Such a claim for lien shall have attached thereto a copy of any notice given in compliance with s. 289.02 and a copy of the notice given in compliance with sub. (2), and shall contain a statement of the contract or demand upon which it is founded, the name of the person against whom the demand is claimed, the name of the claimant and any assignee, the last date of the performance of any labor or the furnishing of any materials, a legal description of the property against which the lien is claimed, a statement of the amount claimed and all other material facts in relation thereto. Such claim document shall be signed by the claimant or by his attorney, need not be verified, and in case of action brought, may be amended, as pleadings are."

notice requirement in sec. 289.02(1)(c), Stats. 1977, was inapplicable in this case. It held that because each building was located on a separate lot, each building constituted a separate improvement. Viewed in this manner, each individual building becomes an improvement that contains less than four living units and, thus, the exception in sec. 289.02(1)(c) to the notice requirement does not apply. Under the interpretation given these statutes by the court of appeals, Cline-Hanson could not have had a lien unless it had filed a separate notice under sec. 289.02(2) for each of the three buildings.

Cline-Hanson petitioned this court for review of the decision of the court of appeals and we granted the petition.

The primary question before us is whether the court of appeals erred by treating the construction as three separate improvements rather than one overall improvement. We hold that the project should have been treated as a single improvement.

Both the court of appeals and Dr. Esselman seemed to assume that each building must be considered a separate improvement for the purposes of the lien statute. The court of appeals did not specifically discuss whether the project should be treated as one overall improvement or as three improvements. It simply stated that, "In this case each improvement is totally located on one platted lot." Having assumed that each building was to be treated separately, the court of appeals was able to logically conclude that the exception in sec. 289.02(1)(c), Stats. 1977, to the notice requirement did not apply. The court of appeals relied upon sec. 289.01(3), Stats. 1977, which defines the extent and character of a lien:

"(3) EXTENT AND CHARACTER OF LIEN. Every person who performs any work or procures its performance or furnishes any labor or materials or plans or specifications for the improvement of land, and who complies with s. 289.02, shall have a lien therefor on all interests

in the land belonging to its owners. The lien extends to all contiguous land of the owner, but if the improvement is located wholly on one or more platted lots belonging to the owner, the lien applies only to the lots on which the improvement is located."

Because the three buildings in this case were all located wholly on their own separate, platted lots, the court of appeals concluded from sec. 289.01(3) that any liens Cline-Hanson might have filed could apply only to the individual lots on which the buildings were located. Under this interpretation, it necessarily follows that the exception to the notice requirement would not apply to this case. The exception in sec. 289.02(1)(c) applies when "more than 4 family living units are to be provided or added by such work of improvement."[3] The individual apartment buildings here contained only two or three apartments. Therefore, if each building is deemed to be a separate improvement, there will be less than "4 family living units," and the exception to the notice requirement will not apply. This would be true regardless of whether we construe "family living unit" to mean an individual apartment, as the trial court did, or to mean an entire apartment building.

However, we hold that in this case, involving one entire, indivisible contract, it is more logical to treat the

---

[3] Sec. 289.02(1)(c), Stats. 1977, provides:

"289.02 **Notice required to preserve lien rights; exceptions; saving clause; obligations of contractors.** (1) EXCEPTIONS TO NOTICE REQUIREMENT. The notice required to be given by lien claimants under sub. (2) shall not be required to be given in the following cases only: . . .

"(c) By any lien claimant furnishing labor or materials for an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement, if the improvement is wholly residential in character, or in any case where more than 10,000 total usable square feet of floor space is to be provided or added by such work of improvement, if the improvement is partly or wholly nonresidential in character."

entire project as a single improvement because Dr. Essel-
man and Schlafer entered into a single contract to con-
struct all three buildings.[4] No attempt was made to
separate the project into three distinct units. Instead,
construction took place on all the buildings at the same
time. Materials were used indiscriminately on the build-
ings. The costs of labor and materials were attributed to
the entire project. They were not divided among the
three buildings. Pursuant to its contract with Esselman,
Schlafer subcontracted the flooring work out to Cline-
Hanson. The contract between Schlafer and Cline-Han-
son also provided for a single, lump sum price to cover
the labor and materials for all three buildings. Cline-
Hanson furnished the flooring materials for all the build-
ings, treating the work as a single project.

While we find no previous Wisconsin cases directly on
point, several older decisions of this court suggest that a
lien may extend to more than one lot or building if the
entire project is covered by a single contract. In *Chap-
man v. Wadleigh*, 33 Wis. 267 (1873), the court granted
a lien to suppliers of lumber who had furnished lumber
for three buildings on two adjacent lots. The original
contract in that case called for the plaintiffs to furnish
lumber to build one house and to repair an existing
house, both of which were to be located on the same lot.
While this material was being furnished, the owner
acquired an adjoining lot. The existing house was moved

---

[4] The court of appeals felt that its decision was "consistent
with the purpose behind the notice requirement." The court
wrote that this purpose is to make potential purchasers aware
that a lien against the property exists. By requiring a separate
filing for each building, the court believed that potential pur-
chasers would be made aware of the lien. However, the court of
appeals was mistaken because the sec. 289.02(2) notice of lien
rights is not filed and does not provide notice to potential pur-
chasers. Neither does the notice of intent to file a lien claim
under sec. 289.06(2), Stats. In fact, potential purchasers are not
put on notice by any filed document until the actual claims for
lien is filed under sec. 289.06(1).

onto this adjoining lot and the plaintiffs furnished lumber for its repair, as agreed in the original contract. The parties then agreed to modify the contract so that the plaintiffs would also furnish lumber for a barn to be built on the original lot containing the new house. The court held that all the lumber had been furnished under a single contract and allowed a lien on both lots for the value for the entire unpaid balance owed to plaintiffs. The case is unusual in several respects: the materials were furnished over a period of almost two years, the contract was modified after some lumber had already been supplied, and the second lot was not acquired until almost a year after the contract had initially been entered into. However, the case is significant because the court did allow a single lien to extend to two adjacent lots and it based its holding on the existence of a single contract covering all the materials.

In *Findorff v. Fuller & Johnson Mfg. Co.*, 212 Wis. 365, 248 N.W. 766 (1933), the court applied this single contract concept to a case involving the partial razing and subsequent construction of a building. The court held that the parties intended that one contract cover the entire project: "We find nothing in the contract (which in our opinion is clear and unambiguous) to justify the conclusion that the parties to the contract intended the contract to be divisible or that two separate jobs were to be performed by the plaintiffs, that is to say: one relating to the razing of the blacksmith shop back to the line of the new building, and another relating to the building of a temporary partition, new wall, roof, etc." 212 Wis. at 371. Having held the contract to be indivisible, the court found that the plaintiffs had filed their claim within the six-month statutory period following the last performance of work.

This court has applied this same kind of analysis to cases where a materialman furnishes materials for a building on successive occasions. In the 1861 case of

*Fowler v. Bailley,* 14 Wis. 136 (1861), the court found that, although the plaintiff had supplied the material at different times, the deliveries were all made under a single contract. The plaintiff was thus allowed a lien for the full amount of the materials furnished. A similar result was reached in *Taylor v. Dall Lead & Zinc Co.,* 131 Wis. 348, 111 N.W. 490 (1907).

Numerous cases from other jurisdictions have considered the issue of whether a mechanic's lien will be allowed to extend to separate buildings. Many of these cases are collected in Annot., *Mechanic's Lien for Work on or Material for Separate Buildings of One Owner,* 15 A.L.R.3d 73 (1967). The lack of agreement among the various jurisdictions is partially explained in the annotation by the considerable differences in the statutes controlling mechanics' liens. The annotation cautions that the terms of a local statute may render rulings on similar factual situations from other jurisdictions inapplicable to a given case. Nevertheless, the annotation is of value in identifying the relevant factors employed by various courts in deciding whether to allow a single lien to cover more than one building. Significant among these factors is, "The fact that the work on or the material for several buildings of one owner was performed or supplied by the lien claimant pursuant to one entire contract not apportioning the items or the price between the several buildings. . . ." 15 A.L.R.3d 175. The fact that the buildings were located on contiguous lots has also been deemed important in many cases. 15 A.L.R.3d 204.

Our holding that a single lien may extend to more than one lot is consistent with the discussion found in *Wisconsin Construction Lien Law* (1968), CLEW, by Professor Walter B. Raushenbush. We have looked to this publication in the past as an aid in interpreting the legislative intent of the Wisconsin lien laws.[5] Raushenbush con-

[5] *See, e.g., Goebel v. National Exchangors, Inc.,* 88 Wis. 2d 596, 611, 277 N.W.2d 755 (1979).

cludes that the statute does contemplate the possibility of a single lien covering all the land: "However, it is much more common for more than one building to be constructed . . . on a group of contiguous platted lots belonging to the owner. In either such case, the statute contemplates the possibility of a single lien covering all the land. Therefore, in such cases, the question must be whether the construction or improvement contract is entire, or consists of divisible or separate contracts." Raushenbush at 40.

We hold, therefore, in this case, that a single lien may be attached to cover all three contiguous lots. We also agree with the trial court that the buildings in this case did fit within the sec. 289.02(1)(c) exception to the notice requirement. In order to qualify under this exception, more than "4 family living units" must be included in the improvement. To construe "family living unit" as meaning an individual apartment is consistent with both the common usage of the terms and with the legislative history of this statute. A Legislative Council Note explains the purpose behind this statute:

"This proposal represents a major change from present law. It eliminates any notice requirement (of the sort now found in S. 289.02) for other than relatively small construction. The purpose is to work toward earlier and more realistic notice on those smaller jobs where the owner may be inexperienced, unaware of the construction lien laws, and hence in possible danger of having to pay twice or lose his property. On larger construction, such unawareness will not be a factor, and lenders and owners can set up their own machinery for ascertaining who the potential lien claimants are." Legislative Council Note, 1967, sec. 289.02, Wis. Stats. Annot.

The trial court correctly pointed out that if "family living unit" is construed as an entire building, then the express legislative intent will not be honored. A single building could contain hundreds of apartments and still

not fall within this exception. The exception is clearly meant to eliminate the notice requirement for all but relatively small projects. The legislature has fixed the line where notice is not required. Projects involving more than four individual apartments come within that line. It is irrelevant that the owner in this case is a dentist who may have been inexperienced in the field of lien laws. The legislative protection for inexperienced owners extends only to projects involving four or fewer family units. Because he contracted for a single project involving eight apartments, Dr. Esselman was not entitled to notice under sec. 289.02, Stats.

*By the Court.*—The decision of the court of appeals is reversed and the judgment of the trial court is reinstated.