TORKE/WIRTH/PUJARA, LTD., ARCHITECTS & ENGINEERS, a Wisconsin corporation, Plaintiff,

v.

LAKESHORE TOWERS OF RACINE, a Wisconsin joint venture, Korndoerfer Development Group, Ltd., a partner, Capstone Development Corporation, a partner, Verhalen, Inc., Olympic Wall System, Inc., General Caulking, Inc., Rewald Electric Company, Inc., Rudy Coca, d/b/a Rudy's Masonry, The Wenninger Company, Inc., North American Heating & Air-Conditioning Company, Theophilus N. Kochs, Ethel M. Kochs, Robert Gordon and Rondi Gordon, Defendants,

KORNDOERFER CORPORATION, Defendant-Respondent-Cross Appellant,

SIESEL CONSTRUCTION COMPANY and Bill Dentinger, Inc., Defendants-Respondents,

KINNIER INDUSTRIES, INC., d/b/a Badger Railing, Defendant,

Anthony J. TEMPELMAN, Norine Tempelman, M & I Mortgage Corporation, Mardell A. Groth, Heritage Bank & Trust, Larry K. Switzer, Carol L. Switzer, Robert L. Schmidt, Richard A. Nielsen, Gloria A. Nielsen, Thomas N. Bayer, Ann G. Bayer, G. Kenneth Johnson, Dorothy Johnson, Thomas J. Horn, Carmen E. Horn, Earl E. Richter, Carlista M. Richter, Fidelity Title, Inc., Keith F. Stewart, Celine D. Stewart, Bank One Racine, N.A., Richard A. Gooner, Heber Tonella, Patricia A. Tonella, Robert M. Kimball, Nancy L. Kimball, David H. Cool, Marianne R. Cool, Robert M.

481

Flanigan, Carolyn B. Flanigan, Kenneth B. Mathia, Joyce F. Mathia, Herbert Realty Company, Joseph M. Davie, Janet S. Davie, Biltmore Investors Bank, Julian J. Newman, Syril F. Newman, Case Corporation, James A. Bolm, Gloria M. Bolm, Egon W. Schnoor, Rose Marie Schnoor, Bernard D. Manning, James F. Holland, Eileen G. Holland, Lawrence T. Burden, Jeffrey M. Mc Grath, Joan G. Mc Grath, L.G. Enroth, Mary P. Enroth, John J. Kuhn, Jr., Patricia Ann Kuhn, F & M Bank, Miriam Noll, David Guanci, Francis W. Reich, Charles J. Schultz, Linda J. Schultz, Harriet Schultz, Jeffrey C. Merrick, Kathleen M. Merrick, Joseph F. Moulis, Donna M. Moulis, The James T. Higgins Irrevocable Trust, William J. Higgins, Jr., trustee, Carol A. Kiryluk, S.C. Johnson & Son, Inc., Glenn A. Oakes, Sandra Oakes and C. William Hardt, Defendants-Appellants-Cross Respondents.

Court of Appeals

*No. 93–2507. Oral argument January 10, 1995.—Decided March 8, 1995.*

(Also reported in 531 N.W.2d 419.)

482

On behalf of the defendants-appellants-cross respondents, the cause was submitted on the briefs and oral argument of *John A. Rothstein* of *Quarles & Brady* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Brian W. Mullins, Hugh N. Anderson, and Carl A. Sinderbrand* of *Wickwire Gavin, P.C.* of Madison. Oral argument was by *Carl Sinderbrand.*

On behalf of the defendants-respondents, the cause was submitted on the briefs and oral arguments of *Thomas A. Hauke* of Milwaukee for Bill Dentinger, Inc. and *Thomas E. Dolan* of Milwaukee for Siesel Construction Company.

Wisconsin Land Title Association's brief as *Amicus Curiae* was submitted by *Steven W. Martin* of *Hinshaw & Culbertson* of Brookfield.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.  Owners of a condominium project, lenders, realty companies and title insurance companies appeal from a judgment of the circuit court, awarding *in personam* money judgments against Lakeshore Towers of Racine, a joint venture, Korndoerfer Development Group, Ltd. and Capstone Development Corporation and granting an *in rem* construction lien foreclosure judgment against the owners' properties. Korndoerfer Corporation cross-appeals from the judgment wherein the court conditioned the construction lien foreclosure judgment against the properties and property interests of the owners upon an apportionment of the amount of the judgment.

Because we conclude that a subcontractor must file a thirty-day notice of intent to file a lien claim in order to maintain an independent lien claim; that where a subcontractor brings an independent lien claim against owners, the prime contractor has a duty to defend the owners even where the prime contractor is owed money; and that prejudgment interest is not a lienable item that can be collected against the properties of nonprivity owners, we reverse in part. Because we conclude that the Korndoerfer Corporation satisfied the thirty-day notice requirement when it placed the notices in the mail; that the Korndoerfer Corporation properly perfected its lien as against the owners and properly amended its lien within the six-month period under § 802.09(1), STATS.; and that the trial court correctly divided the lien proportionally among the owners, we affirm in part.

## FACTS

Korndoerfer Development Group, Ltd. and Capstone Development Corporation entered into a joint venture, known as Lakeshore Towers of Racine (the developers), to develop and construct a condominium project. The project is an eight-story residential condominium facility containing 72 residential units and 255 parking units. In August of 1988, the developers entered into a contract with Korndoerfer Corporation (KC) as the construction manager for the project. Siesel Construction Company (Siesel) and Bill Dentinger, Inc. (Dentinger) were trade contractors to KC. KC had no contractual relations with any of the subsequent unit owners in the project.

Torke/Wirth/Pujara, Ltd. (TWP) was the architectural firm providing services on the project. On January 31, 1991, TWP stopped working on the project because of the developers' nonpayment. A separate judgment was entered in this case in favor of TWP and against the developers.

On appeal, the individual unit owners, lenders, realty companies and title insurance companies (owners) challenge, among other things, procedural aspects of KC's lien claim. KC sent a thirty-day notice of intent to file a claim for lien by registered mail, return receipt requested, on September 9, 1991, to the developers. KC filed a claim for lien against the developers on October 30, 1991, in the amount of $298,823.60.

On October 17, 1991, KC sent a thirty-day notice of intent to file a claim for lien by registered mail, return receipt requested, to the owners of the condominium units to date. Notices to three more units were sent by registered mail, return receipt requested, on October 26, 1991. On November 27, 1991, KC filed an amendment to its lien claim, adding the individual owners of

the units in the project. The amendment was filed prior to this action and without leave of the court. The trial court held that this was the first lien claim filed against the interests of the individual unit owners. On April 27, 1993, the court granted KC's motion to amend the lien claim.

KC filed a second amendment to its lien claim on May 19, 1992, without leave of the court, changing the amount of the lien to $554,642. The court held that this was the only amended lien claim filed against the interests of any of the individual unit owners. Subsequently, the trial court amended "the amounts of the lien claim, amended lien claims and [KC's] pleadings" to conform to the evidence presented at trial.

Following a bench trial, the trial court concluded that KC was entitled to an *in personam* money judgment against the developers, jointly and severally, and an *in rem* judgment "directing the foreclosure and sale of all residential and parking units in the Project, the proceeds of which shall be applied against the lienable unreimbursed services performed by KC on the Project." The court directed how the lienable portion of the amount to be collected by KC would be divided between KC, Siesel and Dentinger.

The trial court found that the last day on which KC performed any labor or furnished any materials directly to the project or through its subcontractors was no later than December 31, 1991. The trial court held that KC was entitled to recover the cost of subcontractors' additional services or materials to the project prior to December 31, 1991.

The trial court found that the procedural validity of Dentinger's and Siesel's lien claims was moot because their liens were "independently valid, protected and preserved by incorporation under KC's lien."

The trial court held that the construction liens were to be proportionally allocated among all of the condominium units. Prejudgment interest was to be paid at a rate of five percent per annum, not compounded, against the condominium units of third-party owners. The developers were required to pay prejudgment interest at a rate of twelve percent per annum, not compounded.

The owners appeal from the trial court's judgment. KC cross-appeals from the trial court's judgment wherein the trial court conditioned the construction lien foreclosure judgment against the properties and property interests of the owners upon an apportionment of the amount of the judgment.

## DISCUSSION

### *Application of the Miller Act*

The owners contend that Claus Wolfgang Korndoerfer is the principal behind Korndoerfer Development and KC. The owners argue that the principle of liberally constructing Wisconsin's lien law[1] "should not be applied to Korndoerfer's claim because of the transparently manipulative relationship between Korndoerfer and the entity which really should have paid, namely Mr. Korndoerfer's joint venture." While this issue has not yet been addressed by the Wisconsin

---

[1] "[L]ien laws are remedial in character and are to be liberally construed to give effect to the legislative intent of protecting the claims of tradesmen, laborers and materialmen for work and materials supplied." *Wes Podany Constr. Co. v. Nowicki*, 120 Wis. 2d 319, 324, 354 N.W.2d 755, 758 (Ct. App. 1984).

Supreme Court, the owners believe that it is well established in federal cases involving the Miller Act.[2]

After a review of the transcripts, we conclude that the issue of Claus Korndoerfer's control over Korndoerfer Development and KC was an underlying but unplayed theme at trial. While the owners allude to the issue of common control in the statement of facts in their principal brief, they present no legal argument. This issue was raised for the first time in the owners' reply brief. We will not consider an issue raised for the first time in a reply brief. *State v. Lewandowski*, 122 Wis. 2d 759, 763, 364 N.W.2d 550, 552 (Ct. App. 1985). While the alleged relationship between KC and one of the developers troubles this court, we wait for another day to address this issue when a better developed record is before us.

*Liens Awarded to Subcontractors: Siesel and Dentinger*

The owners argue that the trial court erred in awarding liens to subcontractors Siesel and Dentinger because Siesel did not send its thirty-day notice to any of the owners who had purchased thirty units and fifty-four parking spots at the time of its thirty-day notice and Dentinger failed to send a thirty-day notice to anyone pursuant to § 779.06, STATS. Section 779.06(2) provides in relevant part:

---

[2] In *American Casualty Co. v. Assiran*, 289 F. Supp. 645, 646 (D. Mass. 1968), the court stated:

> The purpose of a Miller Act bond is to protect those suppliers of labor and materials who are not part of 'the family' of the principal and who are, as it were, strangers dealing without opportunity for knowledge of the principal's resources and without a common commitment in joint ventures.

> No lien claim may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim.

The owners contend that neither subcontractor satisfied the notice requirement of § 779.06.

The trial court held that the procedural validity of Siesel's and Dentinger's lien notices was moot because the subcontractors' liens were independently valid, protected and preserved by incorporation into KC's prime contractor lien: "[S]ubcontractors' right to payment arises from its contractual relationship with Korndoerfer Corporation, and while both may act to protect their claims by using liens, the lien claim of Korndoerfer incorporates the lien claim of Korndoerfer and all subcontractors."

Siesel agrees with the trial court's determination, citing *Wes Podany Constr. Co. v. Nowicki*, 120 Wis. 2d 319, 324, 354 N.W.2d 755, 758 (Ct. App. 1984), for the proposition that Wisconsin's lien laws should be liberally construed to give effect to the legislative intent of protecting the claims of contractors who supplied the work and materials for the project.

Whether Siesel and Dentinger are required to file thirty-day notices of lien claims under § 779.06(2), STATS., requires the interpretation of a statute. This is a question of law which we review de novo. *See K.N.K. v. Buhler*, 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987). Because we conclude that § 779.06(2) is clear and unambiguous, we need not look beyond the language of the statute itself to ascertain its meaning.

493

*See J.A.L. v. State,* 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991).

■

We disagree with Siesel that the general rule of liberally construing lien law should be used to construe and extend a statute that is clear on its face. There is no exception to the thirty-day notice requirement which would allow a subcontractor to be exempt from the requirement because the prime contractor filed a notice. We conclude that in order for a subcontractor to maintain a separate lien claim from the prime contractor and be a beneficiary of a judgment, it must file a notice of lien claim just as any other lien claimant pursuant to § 779.06(2), STATS.[3]

■

Because Siesel sent notices of lien claims to the developers, it contends that "in the case of *subcontractors* the only owner to whom notice under the statute should be given, should be the owner on the date he did the first work or provided the first material, and *subcontractors* should be able to rely on the initial ownership check when the first work is performed." We disagree. Regardless of the amount of work the subcontractor performs in relation to the whole project, if it brings a lien claim independent from the prime contractor, it is required to follow the procedures required of all lien claimants under the statutes. A subcontractor cannot necessarily rely on the initial ownership

[3] Section 779.06(2), STATS., requires that a "lien claimant" must serve the owners with a thirty-day notice of lien claim. Lien claimants are defined as "any person who claims a lien under this section pursuant to a contract for improvement of land entered into by an owner of the land." Section 779.01(2)(b), STATS. Siesel and Dentinger qualify as lien claimants under this definition.

check when the first work is performed if it has knowledge or constructive knowledge of subsequent purchasers. *See Wes Podany*, 120 Wis. 2d at 326, 354 N.W.2d at 758.

Siesel argues that even if it was required to give notice, it did not have actual or constructive notice of the conveyance of condominium units to various owners. Siesel cites *Wes Podany* for the following proposition: "[A] contractor does not lose his lien rights if, after he commences work, the owner with whom he contracted conveys the property to another, provided the contractor has no *actual* or *constructive* notice of the *conveyance* . . . ." *Id.* (emphasis added).

A trial court's findings of fact will not be set aside unless we conclude that they are clearly erroneous. Section 805.17(2), STATS. After reviewing the record, we agree with the trial court's findings that there is no evidence that Dentinger gave notice of its lien claim: "[Dentinger] offered no proof as to whether it served a 30-Day Notice of Intent to File Lien (or if it did, on whom) for the real estate or condominium units involved in this action." Additionally, we agree with the trial court's finding that Siesel's notice of lien claim was not given to the owners even though Siesel had knowledge of their ownership: "[Siesel's proof] established that it did not send its 30-day notice to any of the Quarles & Brady Clients in the Project even though it had knowledge that 30 residential units and 54 parking units had been sold to said individuals by the time of its 30-day notice." We conclude that the trial court's findings are not clearly erroneous.

We reverse the judgment of the trial court to the extent that it gives Dentinger a separate judgment and

strike Dentinger from the judgment. We also reverse the judgment to the extent that it gives Siesel a separate judgment as to the thirty homeowners and their accompanying parking spaces as of the date Siesel sent out its thirty-day notices and strike Siesel from the judgment regarding those homeowners. Siesel has an independent lien claim against the remaining residential units and parking units. We leave the judgment in favor of KC, including the amount owed to the subcontractors under KC's lien. As the prime contractor, KC will have the obligation to pay its subcontractors.

### Prime Contractor's Duty to Defend Owner

KC refused to defend the owners in the action against the subcontractors, claiming that it was not required to defend the same lien claim that it was prosecuting. Section 779.02(6), STATS., states:

> PRIME CONTRACTORS TO DEFEND LIEN ACTIONS. Where a lien is filed under this subchapter by any person other than the prime contractor, the prime contractor shall defend any action thereon at personal expense, and during the pendency of the action the owner may withhold from the prime contractor the amount for which the lien was filed and sufficient to defray the costs of the action. In case of judgment against the owner, the owner may deduct from any amount due to the prime contractor the amount of the judgment and if the judgment exceeds the amount due, the owner may recover the difference from the prime contractor.

The trial court ruled that KC was not required to defend the owners under § 779.02(6). The court reasoned that it was not "the intended purpose of the statute in its common sense reading to allow there to be an indemnification made based on that statute."

The owners argue that "the trial court erred in engrafting an exemption to the statute for 'equity' circumstances where the prime contractor is owed money." The owners state that the trial court's ruling would essentially "gut" § 779.02(6), STATS., by requiring an owner to blindly accede to, and first pay all of a prime contractor's demands—whatever they are and including even unrelated claims—before obtaining a defense by the prime contractor against the claims of a subcontractor.

KC responds by stating that where subcontractors' lien claims are derivative of KC's lien claim, a rule requiring KC to defend those subcontractors' claims on behalf of the owner would be contrary to the intent of the lien law. KC further contends that § 779.02(6), STATS., "applies when a prime contractor fails to pay subcontractors after payment by the owner. This provision does not apply to the situation where an owner has failed to pay for the subcontractor's work."

Whether the prime contractor has a duty to defend the owners of the property requires the interpretation of 779.02(6), STATS. This presents a question of law which we review de novo. *See K.N.K.*, 139 Wis. 2d at 199, 407 N.W.2d at 286. Because § 779.02(6) is clear and unambiguous, we need not look beyond its plain meaning in our interpretation. *See J.A.L.*, 162 Wis. 2d at 962, 471 N.W.2d at 502.

We conclude that under § 779.02(6), STATS., there is a clear duty to defend. KC's duty to defend the owners is not suspended because it is owed money. The owners are entitled to recover their actual attorney's fees, costs and disbursements incurred in defending themselves against the subcontractors. A prime contractor has a statutory duty to defend owners against

its own subcontractors. To hold that the prime contractor has no duty to defend an owner against the claims of its subcontractors when it is owed money would be not to construe but to rewrite § 779.02(6). *See State v. Engler,* 80 Wis. 2d 402, 410, 259 N.W.2d 97, 101 (1977). That is a task for the legislature, not for this court. *Id.* We remand to the trial court for a hearing on the application of the statute.

### *Service of Thirty-Day Notice*

The owners request that this court resolve the question of whether mailing of the thirty-day notice without receipt is sufficient to satisfy the requirement of service. Section 779.06(2), STATS., provides in relevant part:

> No lien claim may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim.

The trial court stated:

> The obligation under the statute is for the party giving the notice to use return receipt requested. They have done that here. They have complied with the statute. It doesn't say that it must be proven by return receipt. They've shown that they did place these in the mail by the evidence and documents that they presented here, and I'm satisfied that by their doing that, they have in fact substantially complied with the statute and the intent of the statute by mailing the notice of lien claims to the property owner.

On October 17, 1991, KC sent notices of intent by registered mail, return receipt requested, to the unit owners at that time. There were three exceptions. Notices were sent to these three unit owners on October 26, 1991.

Out of the notices sent on October 17 and 26, five were not delivered, four were received by people who were not agents of the unit owners, and two were received by the respective owners less than thirty days before KC filed its first amended claim for lien. KC amended its lien claim to include the individual owners of the units on November 27, 1991.

The owners contend that the term "service" in § 779.06(2), STATS., should be construed to mean that whatever method of service is chosen, *receipt* of the notice must occur before service is completed. They also contend that the person served must *receive* the notice thirty days before the lien claim is filed in order to accomplish proper service pursuant to the statute. The owners contend that the purpose of the thirty-day notice requirement is that the owners know thirty days in advance that a lien claim may be filed against them. In contrast, KC argues that the general rule in Wisconsin is that when service by mail is allowed, service of an item is effective upon mailing.

Neither party has fully developed its arguments. Our independent research has uncovered case law that sets forth the general rule of notice as follows: "[I]t can be said as a general rule in the absence of the statutory provision, that service of notice would not become effective until the party received it." *Boeck v. State Highway Comm'n*, 36 Wis. 2d 440, 444, 153 N.W.2d 610, 612 (1967). Additionally, in *Evans v. Bureau of Local & Regional Planning*, 72 Wis. 2d 593, 597-98, 241 N.W.2d 603, 606 (1976), the court noted *Boeck* and confirmed

499

that this general rule is applicable in the absence of statutory provisions.

Whether service is completed at the time of mailing or at the time of receipt is a question of statutory interpretation which we review de novo. *See K.N.K.,* 139 Wis. 2d at 199, 407 N.W.2d at 286. We conclude that the statute is clear and unambiguous; therefore, we use only the plain language of the statute itself in our interpretation. *See J.A.L.,* 162 Wis. 2d at 962, 471 N.W.2d at 502.

In the present case, the general rule that service of notice is effective upon receipt is not applicable because of the express statutory provisions of § 779.06(2), STATS. The statute provides that service may be made on the owner (1) personally or (2) by registered mail with return receipt requested. If the method of service is by mail, the statute requires (1) that the notice is by *registered* mail, and (2) that return receipt is *requested*. Registered mail and return receipt requested are the only elements necessary for service under this method. The clear intent of § 779.06(2) is that service is completed upon mailing.

Our conclusion is further supported by *Kruse v. Miller Brewing Co.,* 89 Wis. 2d 522, 528-29, 279 N.W.2d 198, 200 (1979). While the issue in *Kruse* differs from the issue in the present case, the court stated the general proposition that:

> [T]he requirement of 289.06(2) [renumbered as § 779.06(2), STATS.] that notice be served on the owner personally or by registered mail with return receipt requested is subject to a less stringent standard for service than the requirements for service of a summons.

500

*Id.* at 529, 279 N.W.2d at 200.

In *American Family Mut. Ins. Co. v. Royal Ins. Co. of America*, 167 Wis. 2d 524, 533, 481 N.W.2d 629, 632 (1992), the supreme court stated that when the sufficiency of service of process is challenged, the party serving the process has the burden to show that it was sufficient. In the present case, KC presented evidence that it did in fact place the notices in the mail to the owners thirty days before the lien claim was amended to include the owners.

### Amendment of KC's Lien Claim

The owners' argument is twofold. First, they argue that KC's amendment of the original lien claim to add all of the existing owners of the project to the lien claim was a nullity at the time of filing. The owners state: "As to the first amendment, at the time KC filed it, no action was pending, and as such, the language of the statute suggests that there was no basis upon which the claim document could be 'amended'."

We must decide whether KC could amend its claim to add additional owners under § 779.06(3), STATS., and amend the amount of the claim under §§ 779.06(3) and 802.09(1), STATS. This is a question of statutory interpretation which we review de novo. *See K.N.K.*, 139 Wis. 2d at 199, 407 N.W.2d at 286. Because we conclude that these statutes are clear and unambiguous, we rely solely on the plain language of the statutes in our interpretation. *J.A.L.*, 162 Wis. 2d at 962, 471 N.W.2d at 502.

Section 779.06(3), STATS., provides in relevant part:

> Such claim document shall be signed by the claimant or attorney, need not be verified, and in the case

of action brought, may be amended, as pleadings are.

We reject the owners' assertion that § 779.06(3) requires that amendments may only be made after an action has been filed. We read the plain language of the statute not to limit *when* amendments may be made, but rather, *if* an amendment is made after an action has been brought, it may be amended in the same manner as pleadings.

Here, the critical question is whether KC properly perfected its lien claim as against the owners of the project. According to § 779.06, STATS., no lien can exist unless within six months from the date the lien claimant furnished the last labor or materials a claim for lien is filed; unless within two years from the date of filing a claim for lien an action is brought; and at least thirty days before timely filing of the lien claim, the lien claimant serves the owner with a written notice of intent to file a lien claim. In the present case, a lien claim was filed within six months of the last day labor or materials were furnished and an action was brought within two years from the date of filing the claim. We concluded above that KC properly served its thirty-day notices of lien claims to the owners of the property by mailing. KC fulfilled the requirement of notice of lien to the owners. Therefore, we conclude that KC maintained a valid lien claim against the owners.

Secondly, the owners argue that the trial court should not have allowed KC to increase the amount of its lien claim by amendment to include new "extras" by its subcontractors more than six months after its original claim had been filed. Section 779.06(3), STATS., provides that in case of action brought, lien claims may

be amended as pleadings are. Section 802.09(1), STATS., which governs amendment of pleadings, states:

> A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10.

KC's original claim for lien amounted to $298,823.60 and was filed on October 30, 1991. Its summons and complaint were filed on March 12, 1992. On May 19, 1992, KC amended its lien claim to increase the dollar amount to $554,642. The court amended the lien claim, amended lien claims and pleadings to conform to the evidence at trial.

The owners contend that KC did not follow the statutory requirements of § 802.09(1), STATS., because its May 1992 amendment was filed six and one-half months after its original claim and it was filed without the consent of the court or any of the parties. They also argue that no new thirty-day notice was sent to the owners.

KC counters the owners' arguments, stating that because the summons and complaint were filed on March 12, 1992, KC's May 1992 amendment was well within the six-month period required by § 802.09(1), STATS. KC states: "A ruling that lien claimants cannot amend the amounts of their lien claim is neither commercially nor legally practical in the context of construction lien claims. . . . Appellants request that this Court re-write sec. 779.06(3), Stats. to prohibit amendments of lien claims that increase the amount of the claim must be denied."

We agree with KC that it properly amended its lien claim within the six-month period after the filing of the summons and complaint. The language of the statute

does not limit the types of amendments that may be made and we cannot find any compelling reason to limit the statute in this manner.

The trial court amended the amounts of the lien claim, amended lien claims and the pleadings to conform to the evidence presented at trial. This was a decision within the discretion of the trial court. Such a decision will only be reversed if there has been an erroneous exercise of discretion. *See Steinbach v. Gustafson*, 177 Wis. 2d 178, 185, 502 N.W.2d 156, 159 (Ct. App. 1993). After a review of the record, we conclude that the trial court reasonably exercised its discretion in amending the lien claim, amended lien claims and the pleadings to conform to the evidence presented at trial and that the owners were not prejudiced by the amendment.

### Interest as a Lienable Item

The court awarded KC and its subcontractors interest at the rate of five percent against the owners, which was the market rate as well as the legal rate pursuant to § 138.04, STATS. The owners argue that "interest is not an includable item under the Wisconsin lien law." They cite STEVEN W. MARTIN, WISCONSIN CONSTRUCTION LIEN LAW HANDBOOK, 2.3 (2d ed. 1991), for the proposition that "a construction lien 'can only be claimed for lienable <u>work</u> or <u>materials</u>.' "[4] The owners

---

[4] The owners cite § 779.01(3) , STATS., claiming that it creates a dichotomy between lienable and nonlienable items. Section 779.01(3) provides in part: "Every person who performs any work or procures its performance or furnishes any labor or materials or plans or specifications for the improvement of land . . . shall have a lien therefor on all interests in the land belonging to its owners."

state that while there is case law which holds that subcontractors can recover interest as a contract right against the person with whom they are in privity, no Wisconsin case addresses whether that interest will be treated as a lienable item against the third person's property in a foreclosure.

In contrast, KC, Siesel and Dentinger contend that in *Kilgust Heating Div. v. Kemp*, 70 Wis. 2d 544, 235 N.W.2d 292 (1975), the supreme court ruled that "prejudgment interest is lienable where the lien claimant is not in privity with the owner."[5] KC also contends that in *R. Fredrick Redi-Mix, Inc. v. Thomson*, 96 Wis. 2d 715, 292 N.W.2d 648, *modified on other grounds*, 96 Wis. 2d 715, 729a, 293 N.W.2d 528 (1980), the court reached the same conclusion.[6]

Whether prejudgment interest is a lienable item requires the interpretation of § 779.01(3), STATS. This is a question of law which we review de novo. *See K.N.K.*, 139 Wis. 2d at 199, 407 N.W.2d at 286. We conclude that no prejudgment interest is allowed. The plain language of the statute does not provide that prejudgment interest is a lienable item in this situation and we will not read such a provision into the statute.

Because we conclude that interest is not a lienable item under § 779.01(3), STATS., we need not address KC's cross-appeal that interest should have been

---

[5] While interest was allowed at the legal rate against the owner of an apartment complex, the question of whether interest is a lienable item under § 779.01(3), STATS., was not an issue on appeal.

[6] Similarly, the issue of whether interest is a lienable item under § 779.01(3), STATS., was not addressed by the trial court in this case.

awarded at the contractual rate of twelve percent against the owners.

*Cross-Appeal:* *Division of Lien Claim*

KC argues that the trial court erred in holding that KC's lien claim should be applied proportionally, not in full, against each condominium unit. KC's main argument is that the legislature provided for apportionment in § 703.09(2), STATS., which was repealed by the legislature in 1978. *See* Laws of 1977, ch. 407, § 2. The successor statute, § 703.22, STATS., does not provide for apportionment. Therefore, KC contends that "[t]he trial court erred in granting the condominium purchasers this repealed right."

Chapter 703, STATS., governs development and operation of condominiums. Section 703.22, STATS., provides in part:

> **Mechanics' and materialmen's liens. (1)** Subsequent to recording a declaration under this chapter and while the property remains subject to this chapter, any and all liens will exist only against individual units and the percentage of undivided interest in the common elements appurtenant to such unit, in the same manner and under the same conditions in every respect as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership.

Because the successor statute is silent as to the amount each unit should pay when a blanket construction lien is foreclosed, KC argues that it does not require a proportional application of the lien.

Whether the lien claim must be divided proportionally or applied in full against each owner under § 703.22, STATS., requires the interpretation of a statute. This is a question of law which we review de novo.

*See K.N.K.*, 139 Wis. 2d at 199, 407 N.W.2d at 286. In *Stevens Constr. Corp. v. Draper Hall, Inc.,* 73 Wis. 2d 104, 115, 242 N.W.2d 893, 898-99 (1976), the court stated:

> It is settled that a lien foreclosure action is an equitable proceeding . . .. The general rule is that a blanket construction lien against an entire property consisting of several parcels cannot be enforced *in toto* against less than all of such parcels. The reason is that it would be inequitable to burden some lesser portion of the liened premises with charges for labor and materials which were not actually furnished to that particular parcel. The corollary to this general rule is that, where the total labor and material costs for which the blanket lien is claimed can reasonably be allocated to individual parcels, the amount of the lien can be apportioned to these individual parcels on the basis of such allocation and the liens enforced to this extent against individual parcels. [Footnotes omitted.]

KC argues that *Stevens* is based on the repealed statute and, therefore, should not have been used by the trial court to confer a special right on the owners.

The owners respond to the cross-appeal by stating that the *Stevens* decision was based on both the repealed statute and common law equity principles. The owners argue that the language in *Stevens* has an independent basis in common law and, therefore, should be applied in this case.

We agree with the owners that the holding in *Stevens* has an independent basis in common law. The ability of a trial court to proportionally divide a lien has not been affected by the repeal of § 703.09(2), STATS., and the subsequent creation of § 703.22, STATS.

507

A decision in equity will be reviewed for an erroneous exercise of discretion. *See Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 472, 419 N.W.2d 211, 213 (1988). We conclude that the trial court did not erroneously exercise its discretion by dividing the construction lien proportionally among the condominium units.

Costs are not awarded to any party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.