RIVERWOOD PARK, INC., a Wisconsin corporation, and Lake Park Development Corporation, a Wisconsin corporation, Plaintiffs-Appellants,

v.

CENTRAL READY-MIXED CONCRETE, INC., a Wisconsin corporation, Defendant-Respondent.

Court of Appeals

*No. 94–2413. Submitted on briefs March 10, 1995.—Decided July 12, 1995.*

(Also reported in 536 N.W.2d 722.)

824

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Michael M. Krill* of Wauwatosa.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James L. Dunlap* of *Schmidt, Darling & Erwin* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J. Riverwood Park, Inc. and Lake Park Development Corporation (collectively, Riverwood Park) appeal from the circuit court's grant of summary judgment in favor of Central Ready-Mixed Concrete, Inc. (Central). The sole issue is the validity of construction liens filed by Central against property owned by Riverwood Park. Riverwood Park argues that the liens are invalid because Central failed to comply with the sixty-day lien notice requirement under § 779.02(2)(b), STATS. We conclude that Central was exempt from the sixty-day notice requirement by virtue of § 779.02(1)(c). Accordingly, we affirm.

The facts are undisputed. Riverwood Park and Lake Park Development Corporation are the developers and owners of two single-family residential subdivisions located in the Village of Pewaukee: Lake Park, containing 137 lots and Riverwood Park, containing 104 lots. Riverwood Park hired Earl A. Eichline Enterprises, Inc. as the general contractor responsible for infrastructure subdivision improvements, including sewer and water utilities. Eichline hired Central as a subcontractor to provide concrete for construction of the improvements.

Riverwood Park paid Eichline in full for its work, but Eichline failed to pay Central $19,292.44. Eichline subsequently filed for bankruptcy. Central timely

825

served thirty-day notices of intent to file claims for liens pursuant to § 779.06(2), STATS., and timely filed claims for liens against both subdivisions pursuant to § 779.06(1) and (3). However, Central did not initially serve Riverwood Park with a sixty-day notice of lien rights pursuant to § 779.02(2), STATS.

Riverwood Park filed a complaint for declaratory relief requesting that the claims for liens filed by Central be released based on Central's failure to provide a sixty-day notice pursuant to § 779.02(2), STATS. Central subsequently filed a motion for summary judgment, arguing that it was exempt from the sixty-day notice requirement by virtue of § 779.02(1)(c). The trial court granted Central's summary judgment motion, holding that Central met the exception under § 779.02(1)(c) to the sixty-day notice requirement "in that [Central] furnished labor or materials for improvements in each case where more than four family units are to be provided or added by such work or improvement: i.e. 137 lots in Lake Park and 104 lots in Riverwood Park." Riverwood Park appeals.

We review decisions on summary judgment de novo, applying the same methodology as the trial court. *Armstrong v. Milwaukee Mut. Ins. Co.*, 191 Wis. 2d 563, 569, 530 N.W.2d 12, 15 (Ct. App. 1995). That methodology, set forth in § 802.08(2), STATS., has been recited often and we need not repeat it here. *See Armstrong*, 191 Wis. 2d at 569, 530 N.W.2d at 15. Whether Central was excepted from the sixty-day notice requirement requires the interpretation of § 779.02(1)(c), STATS. *See Torke/Wirth/Pujara, Ltd. v. Lakeshore Towers*, 192 Wis. 2d 481, 493, 531 N.W.2d 419, 423 (Ct. App. 1995). This is a question of law which we review independently of the trial court's determination. *Id.*

We begin with the relevant statutes. Section 779.02(2)(b), STATS., states in part:

> Every person other than a prime contractor who furnishes labor or materials for an improvement shall have the lien and remedy under this subchapter only if within 60 days after furnishing the first labor or materials the person gives notice in writing, in 2 signed copies, to the owner . . . .

However, exceptions to this sixty-day notice requirement are set forth in § 779.02(1):

> EXCEPTIONS TO NOTICE REQUIREMENT. The notice required to be given by lien claimants under sub. (2) shall not be required to be given in the following cases only:
>
> . . . .
> (c) By any lien claimant furnishing labor or materials for an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement, if the improvement is wholly residential in character, or in any case where more than 10,000 total usable square feet of floor space is to be provided or added by such work of improvement, if the improvement is partly or wholly nonresidential in character.

Because it is undisputed that the project was wholly residential in nature, resolution of the appellate issue depends on the interpretation of the first clause of the exception—whether Central supplied material or labor for "an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement." *Id.*

Our primary purpose when interpreting a statute is to give effect to the legislature's intent. *Graziano v.*

*Town of Long Lake*, 191 Wis. 2d 813, 818, 530 N.W.2d 55, 57 (Ct. App. 1995). In order to do so, we must first look to the language of the statute itself. *Id*. If the language is clear and unambiguous on its face, we must construe the statute in accordance with its ordinary meaning and may not resort to extrinsic aids. *Id*. If a statute is ambiguous, however, we may look to its content, subject matter, scope, purpose and history to ascertain its reasonable meaning. *Id*. at 822, 530 N.W.2d at 58. A statute is ambiguous if it is capable of being interpreted by reasonably well-informed persons to have two or more distinct meanings. *Id*.

Accordingly, we must first turn to the statutory language itself. A lien claimant is exempt from the sixty-day notice requirement if it furnished "labor or materials for an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement." Section 779.02(1)(c), STATS. Riverwood Park argues that the statute is unambiguous and its plain meaning requires that the work of improvement actually manifests more than four family living units. According to Riverwood Park, because the construction of utility laterals does not add or provide any residential family living units, the exception does not apply.

Central argues that such an interpretation creates an arbitrary distinction between work that adds to the square footage of a residence and work that is equally essential to the creation of the residence but does not add to the actual square footage. Central contends that because the term "improvement" is clearly defined in § 779.01(2)(a), STATS., as including activities which do not add to square footage, such as excavation and land-scaping, Riverwood Park's interpretation is unreasonable. Further, the reference in § 779.02(1)(c),

STATS., to improvements where four family living units *are to be provided* suggests that improvements that facilitate the provision or addition of more than four units in the future may be included.

■

We conclude that § 779.02(1)(c), STATS., is ambiguous because both of the above interpretations are equally reasonable. *See Graziano*, 191 Wis. 2d at 822, 530 N.W.2d at 58. Therefore, we resort to extrinsic aids in an effort to interpret the statute in accordance with the legislature's intent. *See id.* In doing so, we are mindful that lien laws are remedial in nature and are to be liberally construed in order "to effectuate the legislative intent to protect the claims of tradesmen, laborers and materialmen for work or materials provided in the improvement of real property." *R. Frederick Redi-Mix, Inc. v. Thomson,* 96 Wis. 2d 715, 726, 292 N.W.2d 648, 653, *modified,* 96 Wis. 2d 729a, 293 N.W.2d 528 (1980).

■

We first address whether the utility laterals constitute an improvement and consequently whether the concrete furnished by Central constitutes "materials for an improvement." *See* § 779.02(1)(c), STATS. According to § 779.01(2)(a), STATS., an improvement includes:

> any building, structure, erection, fixture, demolition, alteration, excavation, filling, grading, tiling, planting, clearing or landscaping which is built, erected, made or done on or to land for its permanent benefit. This enumeration is intended as an extension rather than a limitation of the normal meaning and scope of . . . "improvement."

Based on this definition, we conclude that the construction of sewer and water laterals constitutes an

improvement because they are fixtures made on the land for its permanent benefit. Accordingly, the concrete supplied by Central for the laterals furnished "materials for an improvement." *See* § 779.02(1)(c).

The next question we address is whether the improvement involved four or more family units. Central points out an additional ambiguity with regard to this issue: whether the materials provided by Central to each subdivision constitute one improvement, or whether each individual family unit within the subdivisions constitutes an improvement. If the latter is the case, the requirement of more than four family units would not be met.

Our supreme court previously addressed an analogous situation in *Cline-Hanson, Inc. v. Esselman*, 107 Wis. 2d 381, 319 N.W.2d 829 (1982). In that case, Esselman owned three adjoining platted lots and entered into a contract with a builder to construct an apartment building on each lot. One of the buildings consisted of two apartments and the other two buildings consisted of three apartments, for a total of eight separate apartments. Construction work took place simultaneously on all three buildings, and materials were supplied indiscriminately for all three buildings. *Id.* at 382, 319 N.W.2d at 829.

Cline-Hanson was hired as a subcontractor by the builder to install floor coverings in all of the apartments. When Cline-Hanson was not paid for its labor and materials, it claimed a single lien covering all three lots. Cline-Hanson previously did not give Esselman the sixty-day notice pursuant to § 779.02(2), STATS. (then § 289.02(2), STATS., 1977).[1] *Cline-Hanson*, 107 Wis. 2d at 382, 319 N.W.2d at 829-30. The issue on

[1] Chapter 289, STATS., was renumbered as ch. 779, STATS. *See* Laws of 1979, ch. 32, § 57.

appeal was whether the construction project was three separate improvements or one overall improvement. *Id.* at 386, 319 N.W.2d at 831. If each building constituted a separate improvement, there would be fewer than four family living units and the exception to the notice requirement would not apply. *Id.* at 387, 319 N.W.2d at 832.

The supreme court held that it was more logical to treat the entire project as a single improvement because Esselman entered into a single contract with the builder to construct all three buildings and all the materials were used indiscriminately among the three buildings. *Id.* at 387-88, 319 N.W.2d at 832. Another factor the court deemed important in applying this so-called "single contract" concept was the fact that the buildings were located on contiguous lots. *Id.* at 390, 319 N.W.2d at 833.

Applying the same rationale here, it is clear that each subdivision constitutes a single "improvement" under § 779.02(1)(c), STATS., and meets the criteria that more than four family living units are included in the improvement. The materials for each subdivision were ordered pursuant to Central's single contract with Eichline and were delivered indiscriminately within the subdivisions. No attempt was made to separate the project into individual residential units; the materials were attributed to the entire project. *See Cline-Hanson*, 107 Wis. 2d at 388, 319 N.W.2d at 832. Further, the work was done for residential units located on contiguous lots.

We have thus far established that Central furnished materials for an improvement involving more than four family living units. We are left to determine whether the residential living units "are to be provided

or added" by Central's work of improvement. Riverwood Park relies on *McQuay-Perfex, Inc. v. Wisconsin Tel. Co.,* 128 Wis. 2d 231, 381 N.W.2d 586 (Ct. App. 1985), to support its argument that the improvement must actually provide or add more than four residential family units. In *McQuay-Perfex,* the court concluded that a major renovation and replacement of an air conditioning system in a commercial building did not fall under § 779.02(1)(c), STATS., because the work did not provide or add more than 10,000 square feet of floor space. *McQuay-Perfex,* 128 Wis. 2d at 235, 381 N.W.2d at 589. Likewise, Riverwood Park contends that the construction of sewer and water laterals does not provide any residential family living units.

We disagree with Riverwood Park's interpretation of § 779.02(1)(c), STATS., that the improvement alone must provide or add the dwellings. First, *McQuay-Perfex* is distinguishable from this case. In *McQuay-Perfex,* the court interpreted the second clause of the exception which applies where the improvement is partly or wholly nonresidential in character. This case involves an improvement wholly residential in character.

Second, under Riverwood Park's reading of the statute, virtually no improvement would be exempt from the lien notice requirement. For example, neither the creation of a basement foundation nor the installation of a roof in and of itself provides or adds any residential family units. However, these are clearly the types of lienable improvements contemplated by the exception, provided that more than four family living units are involved. When interpreting a statute, we must do so in a way as to avoid such unreasonable results. *See Voss v. City of Middleton,* 162 Wis. 2d 737, 749-50, 470 N.W.2d 625, 629-30 (1991). Accordingly,

we conclude that the concrete supplied by Central for the improvements in this case falls within the exception under § 779.02(1)(c), STATS.

Our interpretation is further bolstered when considering related sections. We agree with Central that the definition of "improvement" in § 779.01(2)(a), STATS., clearly suggests that the legislature intended liens to be available for work besides the physical improvement of a residential building. It follows that the exception to the lien notice requirement also encompasses improvements beyond the physical improvement of a building.

Last, we note that the legislative history surrounding the statute supports our interpretation. As the court noted in *Cline-Hanson*, "[t]he exception is clearly meant to eliminate the notice requirement for all but relatively small projects." *Cline-Hanson*, 107 Wis. 2d at 392, 319 N.W.2d at 834.

> [Section 779.02, STATS.,] eliminates any notice requirement . . . for other than relatively small construction. The purpose is to work toward earlier and more realistic notice on those smaller jobs where the owner may be inexperienced, unaware of the construction lien laws, and hence in possible danger of having to pay twice or lose his property. On larger construction, such unawareness will not be a factor, and lenders and owners can set up their own machinery for ascertaining who the potential lien claimants are.

*Cline-Hanson*, 107 Wis. 2d at 391, 319 N.W.2d at 834 (quoted source omitted). It is clear that this was a large construction project, given that each subdivision contained over 100 lots. Therefore, unawareness of potential liens would not be a factor, and the rationale

behind the exception in § 779.02(1)(c) applies in this case.

Based on the above and considering the liberal construction given to lien statutes generally, we conclude that Central was exempt from the lien notice requirement pursuant to § 779.02(1)(c), STATS. Accordingly, we affirm the trial court's summary judgment in favor of Central.

*By the Court.*—Judgment affirmed.