CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY,
Plaintiff-Appellant,†

v.

OFFICE OF the COMMISSIONER OF RAILROADS, Defendant-
Respondent,

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,
Respondent-Respondent.

Court of Appeals

*No. 95–2509. Submitted on briefs March 11, 1996.—Decided
July 25, 1996.*

(Also reported in 553 N.W.2d 845.)

†Petition to review denied.

1

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas L. Smallwood* and *Maile E. Buell* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Kathleen M. Falk*, assistant attorney general.

For the respondent-respondent the cause was submitted on the brief of *Michael J. McCabe* and *James H. Petersen* of *Milwaukee Metropolitan Sewerage District* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   Chicago and North Western Transportation Company (CNW) appeals from an order affirming an order of the Commissioner of Railroads requiring CNW to install and maintain drainage improvements in an earthen railroad grade as designed by the Milwaukee Metropolitan Sewerage District. CNW argues that: (1) the District does not have standing to initiate an action under § 88.87(4), STATS., because the District did not first comply with all of the procedural requirements set forth in § 88.87(2); (2) the Commissioner cannot order CNW to modify its grade if the grade has not already caused an unnecessary or unreasonable accumulation of waters; and (3) CNW cannot be required to modify its grade if there is no evidence that an unnecessary or unreasonable accumulation of waters will arise from changes in natural conditions or the enlargement of the water flow. We conclude that these claims are without merit and, therefore, affirm.

## BACKGROUND

CNW maintains an earthen railroad grade containing five forty-eight-inch culverts through which the Edgerton Channel flows. In 1978 and 1990, the District authorized the Southeastern Wisconsin Regional Planning Commission to study and report on land uses and the flooding consequences in the channel area pursu-

ant to its duties under § 66.89(1), STATS.[1] The study found that upon the completion of the planned use development within the channel drainage area, annual flooding costs within this drainage area would exceed $140,000.

The District decided to improve the channel by increasing its drainage capacity. It also concluded that CNW would have to modify its grade to accommodate the additional flow of water. The District's plan called for CNW to replace the existing forty-eight-inch culverts with three ninety-six-inch culverts. The District petitioned the Office of the Commissioner of Railroads under §§ 88.87(4) and 190.08, STATS., for an order requiring CNW to make these improvements.

After a public hearing on the matter, the Commissioner found that past flooding along the channel was caused by inadequate drainage upstream from CNW's grade rather than by the railroad grade and culverts. The Commissioner also found that the District did not have to wait until CNW's grade caused flooding before the District could petition the Commissioner under § 88.87(4). The Commissioner found that the District's plan for increasing the channel's drainage capacity called for CNW to modify the culverts in the grade to handle the additional water flowing through the channel because "[l]eaving the railroad culverts at their existing elevation and capacity would create a 'dam-like' effect." Accordingly, the Commissioner ordered CNW to install and maintain the drainage improvements as designed by the District.

---

[1] Section 66.89(1), STATS., provides that the commission shall "[p]roject, plan, design, construct, maintain and operate a sewerage system . . . ."

6

CNW sought *certiorari* review of the Commissioner's decision under ch. 227, STATS., and the trial court affirmed. CNW appeals.

## STANDARD OF REVIEW

■■■■

In a ch. 227, STATS., appeal, we review the agency's decision and, therefore, give no deference to the decision of the trial court. *Soo Line R.R. Co. v. Office of Comm'r of Transp.*, 170 Wis. 2d 543, 549, 489 N.W.2d 672, 674 (Ct. App. 1992). CNW challenges the Commissioner's interpretation and application of § 88.87, STATS. Interpretation of a statute and its application to the undisputed facts of a case are questions of law which we review *de novo. Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). Our primary purpose when interpreting a statute is to give effect to the legislature's intent. *Riverwood Park, Inc. v. Central Ready-Mixed Concrete, Inc.*, 195 Wis. 2d 821, 827, 536 N.W.2d 722, 724 (Ct. App. 1995). We first look at the language of the statute and if that language is clear and unambiguous, we construe the statute in accordance with its ordinary meaning. *Id.* at 828, 536 N.W.2d at 724. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons as having two or more different meanings. *Id.* If the statute is ambiguous, then we may examine its content, subject matter, scope, history and purpose. *Id.* Upon reviewing the Commissioner's factual findings, we shall not substitute our judgment for that of the agency as to the weight of the evidence on any disputed finding of fact if that fact is supported by substantial evidence in the record. Section 227.57(6), STATS.

We do, however, defer to an agency's legal conclusions in certain instances:

> First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented.

*Jicha v. DILHR,* 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992) (citations omitted).

CNW argues that because this is a case of first impression, we owe no deference to the Commissioner's order. This appeal involves two major issues: (1) whether compliance with all of the paragraphs contained in § 88.87(2), STATS., is a prerequisite to the Commissioner having the authority to act under § 88.87(4); and (2) whether the Commissioner may order CNW to make improvements when CNW's grade has not been shown to have caused flooding. These are issues of statutory interpretation and the District has not shown that the Commissioner has decided these issues or similar ones. When, as here, we have issues of first impression and the agency has no special expertise or experience in deciding them, we will review the Commissioner's legal decisions *de novo. Jicha,* 169 Wis. 2d at 291, 485 N.W.2d at 259.

8

## I.

CNW argues that the District did not have standing to initiate this administrative proceeding under § 88.87(4), STATS., because the requirements of § 88.87(2), including para. (2)(c), were not satisfied before the District filed its petition. According to CNW, before a petition may be filed pursuant to § 88.87(4), CNW's grade must have already caused past flooding, the railroad must be given an opportunity to correct the cause of the water damage or to acquire rights to use the flooded land, or it must have denied an injured landowner's claim. Section 88.87(2)(c). We disagree.

Section 88.87(4), STATS., provides:

> If a railway company fails to comply with sub.(2), any person aggrieved thereby may file a complaint with the office of the commissioner of railroads setting forth the facts. The office shall investigate and determine the matter in controversy in accordance with ch. 195, and any order it makes in such proceeding has the same effect as an order in any other proceeding properly brought under ch. 195.

Contrary to CNW's assertions, sub. (4) does not state that the railroad company must comply with "all of sub. (2)" before the Commissioner may investigate and determine the matter in controversy. It states that a railroad company must first "comply with sub. (2)." We read that language as requiring compliance with those parts of sub. (2) which are germane to the matter in controversy.

Section 88.87(2)(a), STATS., provides in relevant part:

> Whenever any . . . railroad company . . . has heretofore constructed and now maintains or hereafter constructs and maintains any . . . railroad grade in or across any . . . channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands. All such highways and railroad grades shall be constructed with adequate ditches, culverts, and other facilities as may be feasible, consonant with sound engineering practices, to the end of maintaining as far as practicable the original flow lines of drainage.

This paragraph imposes an affirmative duty on a railroad to refrain from impeding the general flow of water in an unreasonable manner when constructing or maintaining a railroad bed. *See Van v. Town of Manitowoc Rapids*, 150 Wis. 2d 929, 930, 442 N.W.2d 557, 558 (Ct. App. 1989).

Section 88.87(2)(c), STATS., provides in relevant part:

> If a . . . railroad company . . . constructs and maintains a . . . railroad grade not in accordance with par. (a), any property owner damaged by the . . . railroad grade may, within 3 years after the alleged damage occurred, file a claim within the appropriate governmental agency or railroad company. . . . Within 90 days after the filing of the claim, the governmental agency or railroad company shall either correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim. If the agency or company denies the claim or fails to take any action

10

within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

This paragraph imposes procedural prerequisites upon a landowner who is claiming that a railroad caused damage by past flooding before a petition may be filed under § 88.87(4).

■

It is undisputed that CNW's grade has not caused past flooding. But according to engineers' reports, once the capacity of the Edgerton Channel is increased, the grade will cause flooding and damage. Section 88.87(2)(c), STATS., is triggered only when flooding and damage has already occurred and provides remedial steps which may be taken by the railroad. If we read sub. (4) as requiring compliance with para. (2)(c) before a petition could be filed under sub. (4), then the Commissioner could not act to prevent certain harm and damage. This is unreasonable. We conclude that para. (2)(c) is only applicable when a party is filing a claim against a railroad for damage and not when a party is trying to prevent it.[2]

In *Lemonweir River Drainage Dist. v. Chicago, M., St. P. & P. R.R.*, 199 Wis. 46, 49, 225 N.W. 132, 133 (1929), the supreme court relied upon § 89.65, STATS.,

[2] CNW also asserts that pursuant to § 88.87(2)(c), STATS., a claim may only be filed by a damaged property owner and the District has not shown that it is a damaged property owner. Because we conclude that the procedural requirements of para. (2)(c) are not triggered in this case, we need not address this issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (this court need not address all issues when one is dispositive of the appeal).

1929, which is similar to § 88.87, STATS., to conclude that the legislature intended to give the Commissioner the authority to avoid harm.[3] This same intent is now expressed in § 88.87(1), STATS., in which the legislature provides: "The legislature finds that it is necessary to control and regulate the construction and drainage of all highways and railroad grades so as to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters due to . . . railroad grade construction . . . ." Thus, in order for the Commissioner to implement this intent, compliance with para. (2)(c) is not necessary when a railroad's grade has not, but will, cause damage.

But CNW argues that this reading of § 88.87(4), STATS., renders § 88.87(2)(c) superfluous. We are not to read statutes in a manner that leaves parts of a statute meaningless. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 250, 493 N.W.2d 68, 76 (1992). But our interpretation of sub. (4) does not excise the procedural requirements of para. (2)(c) from § 88.87(2). Indeed, property owners who have incurred actual damage and who seek court action still must comply with para. (2)(c) before filing a petition under sub. (4). *Van*, 150 Wis. 2d at 934, 442 N.W.2d at 559. But here, damage has not yet, but will, occur. Thus, we believe that a better reading of sub. (4) is one that allows the District to petition the Commissioner when damage is certain to occur but before that damage has occurred.

---

[3] In *Soo Line R.R. Co. v. Office of Comm'r of Transp.*, 170 Wis. 2d 543, 551 n.3, 489 N.W.2d 672, 675 (Ct. App. 1992), we noted that "[b]ecause former ch. 89 was subsumed into ch. 88 [in 1963], pre-1963 precedents under ch. 89 are relevant to interpreting ch. 88 also."

12

## II.

CNW further asserts that § 88.87(4), STATS., does not apply prospectively to permit the Commissioner to act when there is no finding that a railroad has caused any actual harm. Specifically, CNW argues that in order for the Commissioner to require CNW to protect against future damage, the District must first demonstrate that CNW's grade actually impeded the general flow of water and that any impediment to the flow has already caused an unnecessary or unreasonable accumulation of waters. CNW asserts that while the Commissioner found that CNW's grade will impede the channel's flow in the future, the prospect of future flooding is insufficient to trigger the remedy provided in § 88.87(4). We disagree.

Section 88.87(2), STATS., imposes a duty on a railroad to refrain from impeding the general flow of water in an unreasonable manner when constructing or maintaining railroad grades. *See Van*, 150 Wis. 2d at 930, 442 N.W.2d at 558. The legislature's intent to give the Commissioner the authority to protect landowners before damage has occurred is expressed in § 88.87(1) which provides:

> It is recognized that the construction of highways and railroad grades must inevitably result in some interruption of and changes in the preexisting natural flow of surface waters and that changes in the direction or volume of flow of surface waters are frequently caused by the erection of buildings, dikes and other facilities on privately owned lands adjacent to highways and railroad grades. *The legislature finds that it is necessary to control and regulate the construction and drainage of all highways and railroad grades so as to protect property owners from damage to lands caused by*

13

> *unreasonable diversion or retention of surface waters due to a highway or railroad grade construction and to impose correlative duties upon owners and users of land for the purpose of protecting highways and railroad grades from flooding or water damage.*

(Emphasis added.) We conclude that the legislature used this "protection" language to indicate that it not only intended to assist property owners already damaged, but that it also intended to shield them from circumstances that would cause future damage. This conclusion is further supported by language in § 88.87(2)(b), STATS., which provides:

> Drainage rights and easements may be purchased or condemned by the public authority or railroad company having control of the highway or railroad grade *to aid in the prevention of damage to property owners* which might otherwise occur as a result of failure to comply with par. (a).

Permitting the District to file a petition under § 88.87(4) to prevent future flooding is consistent with this policy.

Indeed, the supreme court has concluded that a statute similar to § 88.87, STATS., imposes on a railroad an ongoing duty to accommodate increased floodwaters impeded by a grade or embankment. *Lemonweir*, 199 Wis. at 49-50, 225 N.W. at 133. In that case, the court wrote:

> [The statute] is but a declaration of the common-law rule that a railroad company crossing with its road-bed a natural watercourse is bound to construct its roadbed so as not to materially interfere with the natural flow of such watercourse; and further, that *such duty is not a once-and-for-all duty and forever*

14

*discharged by a proper original construction over such stream, but is a continuing one,* and such railroad must adjust such construction thereafter and, in the absence of statute to the contrary, at its own expense, to meet changes in the condition of such watercourse arising, either from natural causes, or by reason of any lawful enlargement of the flow in the same because of construction such as are here in question.

*Id.* (emphasis added).

Following this reasoning, we concluded in *Soo Line*, 170 Wis. 2d at 555, 489 N.W.2d at 677, that:

the precedent supports our reading of the statute: the railroad "shall not impede the general flow" of water, sec. 88.87(2)(a), Stats., and the duty not to impede is "ongoing," *Lemonweir*, where the railroad now "maintains" any grade across any drainage course, sec. 88.87(2)(a), even if the increased flow arises from "changes in . . . volume . . . caused by the erection of buildings, dikes and other facilities on privately owned lands." Section 88.87(1), Stats.

■■

We conclude that the statutes and case law demonstrate that the legislature intended to give the Commissioner the power to act before damage has occurred. The Commissioner's finding was based upon engineers' conclusions that when the channel's capacity was increased, CNW's grade would cause flooding if it was not modified. Despite the absence of evidence that CNW's grade did not cause past flooding, we nonetheless conclude that the Commissioner had the authority to act in this case to prevent certain future flooding.

15

## III.

CNW's final assertion is similar to the previous one albeit cast in other language. CNW argues that it cannot be ordered to modify its grade if there is no evidence that an unnecessary or unreasonable accumulation of waters will arise from changes in natural conditions or the enlargement of the water flow. To this end, it contends that under *Lemonweir* and *Soo Line*, it has an ongoing duty to make improvements to its grade after it completes the grade *and* after flooding occurs. Again, we disagree.

As we concluded in the previous discussion, where evidence is presented that a channel's water flow will increase from a planned change, § 88.87, STATS., does not require that those changes be implemented before the Commissioner can act if doing so would cause certain flooding. Furthermore, while *Lemonweir* and *Soo Line* concerned factual scenarios in which flooding had already occurred, the Commissioner's duty to protect against certain future flooding is not grounded in those cases, but upon § 88.87 and its predecessor.

Indeed, CNW's suggestion that the Commissioner cannot act unless flooding has taken place is troublesome. We conclude that it is entirely reasonable for the District to attempt to coordinate the modifications to the channel by first requiring CNW to improve its grade to accommodate the increased water flow. Otherwise, at the very moment those changes in the channel are made, flooding would result. As we said above, it is within the Commissioner's authority to order CNW to make modifications to its grade when the evidence demonstrates that an unreasonable and unnecessary increase in water flow is certain to result. Accordingly, we affirm.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). The Commissioner of Railroads found as an ultimate fact that the Chicago and North Western Railway Company (CNW) "has failed to adequately maintain the drainage facilities through its railroad grade so as to avoid unreasonably impeding storm and stream water and so as to avoid unnecessary accumulations of water at the Edgerton Channel in the City of Cudahy, Milwaukee County." He therefore ordered that CNW "shall install and maintain the drainage improvements as designed by the Milwaukee Metropolitan Sewerage District in coordination with the overall Edgerton Channel project." The Commissioner's finding is clearly erroneous because it is undisputed that CNW has maintained the drainage facilities through its railroad grade sufficient to avoid the flooding of adjacent land. However, CNW's drainage facilities will be inadequate when the Milwaukee Metropolitan Sewerage District concludes the deepening and enlarging of the Edgerton Channel.

The District proposes to take preventive action based on the projections of the Southeastern Wisconsin Regional Planning Commission that continuing urbanization of previously rural open areas will increase flooding in the Kinnickinnic River Watershed and cause extensive flood damage in the future. The Commissioner concluded that the projected future flood damage would not be caused directly by CNW's railroad grade but by the overall inadequacy of drainage facilities beginning at the drop structure just west of the railroad grade and continuing upstream.

Nevertheless, the Commissioner ordered CNW to alleviate flooding caused by conditions over which CNW has no control and could not have anticipated when it constructed its railroad grade and provided culverts which met its obligation under § 88.87(2)(a),

17

STATS., to "not impede the general flow of surface water or stream water in any unreasonable manner . . . ." Because I do not believe that the legislature intended to empower the Commissioner to order a railroad company to reconstruct its railroad grade to accommodate water drainage problems anticipated in the future and not caused by the railroad, I dissent.

The purpose of § 88.87, STATS., is stated in sub. (1) where the legislature finds "that it is necessary to control and regulate the construction and drainage of all highways and railroad grades so as to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters *due to a highway or railroad grade construction* . . . ." (Emphasis added.) Paragraph (2)(a) provides in part:

> Whenever any . . . railroad company . . . has heretofore constructed and now maintains . . . any . . . railroad grade in or across any . . . natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands.

A railroad is required to construct its grades "to the end of maintaining as far as practicable the original flow lines of drainage." *Id*. This provision is clear and unambiguous: A railroad in the construction of its grades is to maintain as far as practicable the original flow lines of drainage. The statute is silent as to the railroad's responsibility where conditions over which it has no control, such as urbanization, disturb the original flow lines of drainage.

18

If a railroad company fails to comply with sub. (2)(a), "any property owner damaged [thereby] may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company." Section 88.87(2)(c), STATS. The district does not claim that it is a property owner damaged by CNW's existing railroad grade. The majority transmutes a statute intended to protect property owners from flooding damage caused by construction of a railroad grade into a vehicle by which railroad companies are compelled to relieve other public authorities of their duties to control water drainage and flooding.

The Commissioner found his authority in § 88.87(4), STATS., which provides:

> If a railway company fails to comply with sub. (2), any person aggrieved thereby may file a complaint with the office of the commissioner of railroads setting forth the facts. The office shall investigate and determine the matter in controversy in accordance with ch. 195, and any order it makes in such proceeding has the same effect as an order in any other proceeding properly brought under ch. 195.

It is undisputed that CNW did not fail to comply with sub. (2); it has not damaged any owner's property by impeding the flow of surface water or stream water. Therefore, there is no person aggrieved who could file a complaint with the Commissioner. The majority engages in judicial legislation when it ignores the plain language of sub. (4) and concludes that sub. (2) applies only to the extent "germane to the matter in controversy." Majority op. at 9.

Despite the clear language of the introductory clause of sub. (4), the majority chooses only so much of the language of sub. (2) as serves its purpose. We have

19

been rightly admonished that we are not to enlarge or restrict the meaning of a statute by judicial construction when the language of the statute is clear. *See State ex rel. Girouard v. Circuit Court*, 155 Wis. 2d 148, 156, 454 N.W.2d 792, 795 (1990). The majority's restriction of the introductory clause to sub. (4) to only part of sub. (2) is classic judicial legislation because the plain language of the statute does not permit the construction adopted.

I read sub. (4) to provide an alternative to the filing of a damage claim by a property owner aggrieved by the failure of a railroad company to comply with sub. (2). The property owner may consider that his or her damage remedy is insufficient. Further, sub. (4) permits the Commissioner to make an order which may obviate the necessity of the landowner bringing repeated actions for damages for each flooding. In the consolidation and revision of former §§ 88.38 and 88.40, STATS., into § 88.87, STATS., the legislature repealed the provision which gave the landowner a right to bring repeated actions for damages for flooding or water-soaking of lands.

In *Girouard*, the supreme court condemned our practice of finding an unambiguous statute ambiguous and resorting to legislative history to change the meaning of the plain language of the statute. Here, the majority does not bother to find the language of the statute ambiguous; by judicial fiat, it restricts the meaning of the introductory phrase of sub. (4) to reach its desired result. I do not suggest that we are not in the business of construing statutes, but I believe the law is clear that we are not to change the meaning of statutory language by judicial construction.

The majority concludes that case law "demonstrate[s] that the legislature intended to give the

Commissioner the power to act before damage has occurred." Majority op. at 15. The cases relied on by the District and the Commissioner are *Lemonweir River Drainage Dist. v. Chicago, M., St. P. & P. R.R.*, 199 Wis. 46, 225 N.W. 132 (1929), and *Soo Line R.R. Co. v. Office of Comm'r of Transp.*, 170 Wis. 2d 543, 489 N.W.2d 672 (Ct. App. 1992). However, neither of these cases is precedent for the conclusion reached by the majority. *Lemonweir* is not precedential because the statute construed was § 89.65, STATS., 1927, of the Drainage District Law. That statute empowered drainage districts to order railroad companies to enlarge the waterway if a culvert maintained by it obstructed a natural watercourse or natural draw. The drainage district began its action to compel the railroad to remove certain material under a culvert on its right of way which obstructed a natural watercourse. CNW does not obstruct a natural watercourse. The court said that the statute:

> is but a declaration of the common-law rule that a railroad company crossing with its roadbed *a natural watercourse* is bound to construct its roadbed so as not to materially interfere with the natural flow of such watercourse; and further, that such duty is not a once-and-for-all duty and forever discharged by a proper original construction over such stream, but is a continuing one, and such railroad must adjust such construction thereafter and, in the absence of statute to the contrary, at its own expense, to meet changes in the condition of such watercourse arising, either from natural causes, or by reason of any lawful enlargement of the flow in the same because of constructions such as are here in question. This must especially be so where the

21

railway company is a party to the original drainage proceedings as it was here.

*Lemonweir*, 199 Wis. at 49-50, 225 N.W. at 133 (emphasis added).

Section 89.65, STATS., 1927, was directed at a situation far different from that involved here. It is one thing to impose on a railroad company the continuing duty not to obstruct a natural watercourse and a far different thing to require a railroad company to be forever bound to alter its railroad grade and culverts to accommodate the increased flow of surface water caused by urbanization and other factors over which the company has no control.

Further, in *Lemonweir*, the railroad was a party to the organization of the drainage district and was awarded damages on account of the proposed construction of the drainage system. I find it significant that the provision construed by the *Lemonweir* court was included in ch. 89, STATS., of the statutes, while the predecessor statutes to § 88.87, STATS., were contained in ch. 88, STATS., 1927.

In the same term in which the court decided *Lemonweir*, it also decided *Chicago B. & Q. R.R. v. Railroad Comm'n*, 199 Wis. 342, 226 N.W. 286 (1929). The court there construed the predecessor statutes to § 88.87, STATS.—§§ 88.38 and 88.40, STATS., 1925. The railroad commission required the railroad company to construct a suitable opening through the company's embankment to allow water to pass from defendant's upland at a point where the waters originally discharged to the lower levels. The court held that the order of the commission was unreasonable and void because the statute which is now § 88.87(2)(c) gave to the landowner a remedy if he had been wrongfully damaged. The court stated:

22

The statute is intended to meet the conditions found in constructing highways and railroads in a reasonable and practical manner. Necessarily there must be some change in such cases in the natural discharge of waters. The statutes of this state and the decisions of this court clearly recognize that fact. The waters in question are surface waters, recognized at common law as a common enemy, which might be held back by the owner of lower lands by embankments resulting in changing their natural discharge. Secs. 88.38 and 88.40 were intended to give a measure of relief to the owner of the upland from the rule of the common law. . . . The statute does not require that the waters shall be permitted to discharge in their natural condition, but that suitable provision shall be made for their discharge. The railroad company made such provision when it built its road, and for forty years there was no complaint.

*Id.* at 346, 226 N.W.2d at 287-88 (citations omitted).

Thus, the court construed what is now § 88.87, STATS., to give an aggrieved property owner a remedy in damages. The court concluded that what is now § 88.87(4) did not empower the railroad commission to compel the railroad to reconstruct its right of way to accommodate a change in the course of surface waters for which the railroad had no responsibility. I conclude that this case is dispositive and requires that we reverse the order of the Commissioner.

The District and the Commissioner also rely on *Soo Line R.R. Co. v. Office of Comm'r of Transp.* Our decision in that case is much closer to the fact situation involved herein. However, the crucial difference is that in *Soo Line* the railroad's grade presently obstructed surface water flow. Here, whether CNW's grade will obstruct surface water in the future is entirely specula-

tive. I see nothing in the language of the statute which permits the Commissioner to make an order against a railroad on the basis of predictions as to the amount and direction of surface water flow, despite the credentials of the predictor. The Commissioner has no jurisdiction to issue an order against the railroad unless it "fails to comply with sub. (2)." The Commissioner did not find that CNW had failed to comply with sub. (2). CNW has not impeded the general flow of surface water or stream water "in any unreasonable manner." The Commissioner did not make a finding to that effect. In fact, the Commissioner conceded that CNW's railroad grade did not impede the general flow of surface water or stream water in any manner.

While I do not believe that § 88.87, STATS., is ambiguous, a review of the legislative history of the statute confirms my view of its provisions. Section 88.87 was created by Laws of 1963, ch. 572, § 2. The Committee Comment is as follows:

> This section is a consolidation and revision of ss. 88.38 and 88.40. It makes several changes in the law. It recognizes that, under modern methods of highway construction, it is impossible to maintain the free and unobstructed flow and percolation of water as required by former s. 88.38. It therefore substitutes the requirement that sound engineering practices be employed and that the flow of surface or stream water not be impeded in any unreasonable manner so as to cause any unnecessary accumulation of water. It repeals the provisions which, under s. 88.38(1), gave the landowner a right to bring repeated actions for damages for flooding or water-soaking of lands located on the upper side of the highway and, under s. 88.38(1m), for flooding or water-soaking lands located on the lower side of the highway. Instead, the landowner is required either

24

to sue for equitable relief or to bring an action of inverse condemnation to recover compensation for the taking of the land by flooding or water-soaking. This section also imposes a duty upon the landowner to refrain from impeding or diverting surface or stream water in such a way as to cause damage to or flooding of highways. The former section only imposed duties upon the highway authorities and failed to impose any such correlative duty upon landowners.

Committee Comment, 1963, WIS. STAT. ANN. § 88.87 (West 1990).

The predecessor statute to § 88.87, STATS., was first created by Laws of 1913, ch. 159. That statute was later numbered § 88.38, STATS. The statute was solely a damage statute which gave to persons injured by the flooding of their land by a railroad company a right to damages. Shortly after its enactment, the supreme court held that the statute did not empower the Railroad Commission to enforce it. *Chicago & N. W. Ry. Co. v. Railroad Comm'n*, 162 Wis. 91, 155 N.W. 941 (1916). The legislature subsequently conferred on the Railroad Commission (now the Commissioner) power to enforce § 88.38. However, that statute did not change the nature of the statute as purely a damage statute. *See* Laws of 1917, ch. 310.

The claims procedure was added by an amendment to § 88.38(2), STATS., by Laws of 1961, ch. 661.

Throughout its history, what is now § 88.87, STATS., has been a damage statute. I do not disagree that the Commissioner may make an appropriate order to require the railroad to take action to cease impeding surface or stream water in an unreasonable manner.

That, however, is not what the Commissioner did in this case. For these reasons, I dissent.