George PARKER, Alexis West and Jeffrey Maio, Plaintiffs-Appellants,

v.

Arthur JONES, Chief of Police, for the City of Milwaukee and the Board of Fire and Police Commissioners for the City of Milwaukee, Defendants-Respondents.

Court of Appeals

*No. 98–3218–FT. Submitted on briefs March 2, 1999.—Decided April 6, 1999.*

(Also reported in 595 N.W.2d 92.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Laurie A. Eggert* and *Jonathan Cermele* of *Eggert Law Office,* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Grant F. Langley,* City Attorney, and *Melanie R. Swank,* Assistant City Attorney, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. City of Milwaukee Police Officers George Parker, Alexis West, and Jeffrey Maio appeal from the circuit court order granting summary judgment to the City of Milwaukee Board of Fire and Police Commissioners and Chief of Police Arthur Jones. The officers argue that the circuit court erred in concluding that even though Chief Jones suspended

them for more than five days, the Board was not required to afford them their rights under § 62.50(13), STATS.,[1] because Chief Jones issued suspension orders segmenting their suspensions into periods of five days or less. The officers contend that because each of their respective suspensions stemmed from a single transaction or set of events, Chief Jones could not deny them their rights under § 62.50(13) by segmenting their suspensions into shorter periods. The officers are correct and, therefore, we reverse.

The facts are undisputed. In September 1997, Chief Jones suspended the three officers for alleged violations of Milwaukee Police Department rules and regulations: (1) Parker, for seventeen days—in four suspension orders of five, five, five, and two days—arising from a theft investigation;[2] (2) West, for twenty days—in two suspension orders of fifteen and five days—arising from an incident involving the loss

---

[1] Section 62.50(13), STATS., in relevant part, provides:

> DISCHARGE OR SUSPENSION; APPEAL. The chief discharging or *suspending for a period exceeding 5 days* any member of the force shall give written notice of the discharge or suspension to the member and immediately report the same to the secretary of the board of fire and police commissioners together with a complaint setting forth the reasons for the discharge or suspension and the name of the complainant if other than the chief. Within 10 days after the date of service of the notice of a discharge or suspension order the members so discharged or suspended may appeal from the order of discharge or suspension or discipline to the board of fire and police commissioners, by filing with the board a notice of appeal . . . .

(Emphasis added.)

[2] The four suspension orders accused Parker of: (1) "Failing to file an incident report relative to an offense he investigated"; (2) "Failing to interview, in a timely manner, a suspect relative to an offense he investigated and failing to file a report relating to that interview"; (3) "Failing to obey a lawful order emanating from a superior officer"; and (4) "Untruthfulness."

of his service revolver;[3] and (3) Maio for seven days—in two suspension orders of five and two days—arising from his failure to appear in court.[4] In compliance with § 62.50(13), STATS., Chief Jones filed a complaint with the Board regarding West's fifteen-day suspension order, but did not do so regarding West's five-day suspension order or any of Parker's or Maio's suspension orders.

The officers filed timely notices of appeal of each suspension order, pursuant to § 62.50(13), STATS., but the Board accepted jurisdiction only of West's appeal of his fifteen-day suspension. Although acknowledging that, previously, police chiefs had aggregated suspensions arising from single transactions and thus had afforded officers their rights under § 62.50(13) for suspensions "exceeding 5 days," the Board upheld Chief Jones's discretion to segment the suspensions and thereby deny the officers the rights they otherwise would enjoy under the statute.

The officers sought relief from the circuit court, bringing an action for a declaratory judgment and an injunction. The court issued an order granting a temporary injunction requiring Chief Jones to "aggregate charges for the purpose of determining appeal rights pursuant to § 62.50(13), *Stats.*, where the charged rule

---

[3] The two suspension orders accused West of: (1) "Failing to promptly report the loss of Department property to his commanding officer"; and (2) "Failing to obey Departmental Order #97–09 requiring that when a member is off duty, Department equipment which is not carried on the person of the member shall either be secured in the member's residence or in an approved storage site at the member's work location."

[4] The two suspension orders accused Maio of: (1) "Failing to appear in court"; and (2) "Failing to promptly obey a lawful order emanating from a superior officer."

313

violations arise out of a single transaction or chain of events[,]" and requiring the Board to "afford the right of appeal and accept jurisdiction over appeals of discipline where the aggregate number of days an officer is suspended without pay exceeds five, where the charged rule violations arise out of a single transaction or chain of events." The order further prohibited Chief Jones from removing the officers from the payroll until the Board concluded the appeal process, pursuant to § 62.50(18), STATS.[5]

Ultimately, however, the circuit court issued a memorandum decision and order withdrawing the temporary injunction and granting summary judgment to the City. The court concluded that § 62.50(13), STATS., was ambiguous because it failed to clarify whether the suspension orders stemming from a single transaction had to be aggregated for the purpose of determining whether a suspension was one "exceeding 5 days." The court explained:

> [T]he language of the statute does not answer the question in this case: Must the Chief aggregate all charges arising out of the same transaction or chain of events? The statute is silent on this point. It does not require that the Chief **must** file a complaint with the FPC if he suspends for more than five days, "regardless of whether the suspension is imposed

---

[5] Section 62.50(18), STATS., provides:

SALARY DURING SUSPENSION. No chief officer of either department or member of the fire department may be deprived of any salary or wages for the period of time suspended preceding an investigation or trial, unless the charge is sustained. No member of the police force may be suspended or discharged under sub. (11)[, relating to discharges and suspensions exceeding thirty days,] or (13) without pay or benefits until the matter that is the subject of the suspension or discharge is disposed of by the board or the time for appeal under sub. (13) passes without an appeal being made.

via one or more orders." This reading would require the insertion of language not presently in the statute: "(13). . .The chief discharging or suspending for a period exceeding 5 days any member of the force **shall state in one order all disciplinary charges arising out of the same transaction or chain of events and** shall give written notice and immediately report the same . . . ." The statute does not say this. On the other hand, the statute does not expressly allow the Chief to separate rule violations in imposing disciplinary suspensions. Reasonably well-informed persons could differ over the Chief's authority in this matter.

Although the circuit court's decision provides helpful background and analysis, we disagree with its conclusion.

Summary judgment standards, set forth in § 802.08, STATS., have been summarized in many cases, *see Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816, 820 (1987), and need not be repeated here. Although assisted by the circuit court's decision, our review of summary judgment is *de novo. See id.* at 315, 401 N.W.2d at 820.

When "asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent." *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). We begin by looking at the plain meaning of the language of the statute and, if the language is clear and unambiguous, we conclude our inquiry and apply that language to the facts of the case. *See id.* If, however, "the language used in the statute is capable of more than one meaning, this court will determine legislative intent from the words of the statute in relation to its context, subject matter,

scope, history, and the object which the legislature intended to accomplish." *Id.* at 365–66, 560 N.W.2d at 317. "Interpretation of a statute and its application to the undisputed facts of a case are questions of law which we review *de novo.*" *Chicago & North Western Transp. Co. v. Office of Comm'r of R.Rs.*, 204 Wis. 2d 1, 7, 553 N.W.2d 845, 848 (Ct. App. 1996).

We conclude that § 62.50(13), STATS., is clear and unambiguous, and requires the aggregation of suspensions stemming from a single transaction or set of events for the purpose of determining whether a suspension is "for a period exceeding 5 days." Section 62.50(13) begins by stating, "The chief discharging or *suspending for a period exceeding 5 days . . . .*" (Emphasis added.) It does not state, "The chief discharging or suspending *in a single order* for a period exceeding 5 days." Clearly, the statute is focusing on the *duration* of the suspension, not on the administrative manner in which the chief joins or segments the charges. No other reading would be reasonable. As the officers argue:

> The result of the chief's interpretation is that an officer who received a 6-day suspension for a single rule violation would be entitled to the greater due process protections of the statute than an officer who was suspended for 30 days for violating 6 different rules in the same incident, as long as the chief suspended him on 6 different orders of 5 days each.
>
> . . . .
>
> [The officers'] interpretation is consistent with the legislature's intent that the [Fire and Police Commission] be the forum for all suspensions in excess of 5 days, recognizing that a longer suspension is more serious—and more in need of FPC review and public scrutiny—than a shorter suspension.

The flaw in the circuit court's analysis flows from focusing on the chief's authority and discretion to join or segment disciplinary charges, rather than on the statute's concentration on the suspension's duration. Critically, the court's memorandum decision discussed whether § 62.50(13), STATS., "requires the . . . Chief . . . to aggregate all charges arising out of the same transaction or chain of events in meting out disciplinary suspensions." The actual issue, however, is whether, *regardless of how the Chief joins or segments the charges arising out of the same transaction or chain of events,* an officer must be afforded the rights under § 62.50(13), when the total suspension period exceeds five days.

Thus, we have no quarrel with the court's observation that the Chief's discretion "to break down a transaction into separate rule violations" may foster "consistent and predictable discipline" by informing officers of the multiple violations and penalties resulting from their conduct in a single transaction or chain of events. We agree with the circuit court's conclusion that § 62.50(13), STATS., "does not prohibit the Chief from separately stating various rule infractions and the discipline imposed for each." But, unlike the circuit court, we attach no significance to the fact that § 62.50(13), in the court's words, has "no 'express statutory command' requiring aggregation." Why would it include such a *micro-managing* command? After all, the statute addresses *suspensions* "for a period exceeding 5 days," not the nature, number, or length of individual suspension orders adding up to such a suspension length.[6]

---

[6] Interestingly enough, the circuit court appreciated this distinction and carefully articulated this principle in its decision issuing the temporary injunction:

The circuit court also concluded that the Chief's segmenting of the suspensions for the purpose of determining whether the officers were to be afforded their rights under § 62.50(13), STATS., did not deny due process because the officers could still challenge their suspensions by utilizing the grievance and arbitration procedures available under their union's collective bargaining agreement with the City of Milwaukee. Again, we disagree. Certainly, contractual rights the officers may have gained through their union's collective bargaining agreement do not eliminate rights they have been granted by the legislature. Indeed, were that the effect of a provision of the agreement, it would be void. *See City of Janesville v. WERC*, 193 Wis. 2d 492, 500–01, 535 N.W.2d 34, 38 (Ct. App. 1995) ("A contract provision that runs counter to an express statutory command is void and unenforceable.").[7]

> The Court has found that there's some likelihood of success by the plaintiffs and the Court is going to order, therefore, that pending . . . a final determination of the statute, that the policy as it has been in effect of aggregating charges *for the purposes of determining appeal rights* shall continue. *None of this shall prevent the chief from breaking down in any way, as he sees fit in carrying out his duties and responsibilities, the number of days which is sought to be imposed for each individual item of discipline. But if the aggregate number of days exceeds five, then under 62.50, . . . these parties . . . upon whom discipline has been imposed, shall have a right of appeal of that discipline to the fire and police commission.*

(Emphasis added.)

[7] Additionally, as the officers effectively argue, "the contractual arbitration procedure is established by the parties without regard to the legislature's plan of local oversight," and arbitration hearings, unlike Board hearings, are not open to the public. Thus, although our resolution of this appeal based on the clear and unambiguous language of § 62.50(13), STATS., obviates the need to examine the statute's legislative history, we acknowl-

██

Thus, we conclude, the Chief has authority and discretion to delineate disciplinary charges and issue suspension orders specifying violations of and penalties for rule violations. When, however, the violations arise from a single transaction or set of events, the length of the suspension, for the purpose of determining whether it is "for a period exceeding 5 days" under § 62.50(13), STATS., must be measured by aggregating the suspensions.

*By the Court.*—Order reversed.

edge the officers' powerful argument that, were we to find the statute ambiguous, we also would discover that its history reveals the legislature's continuing concern not only for an officer's opportunity to enjoy the rights specified by the statute, but also for the public's opportunity to measure the fairness of such disciplinary proceedings. *See generally* Matthew J. Flynn, Comment, *Police Accountability in Wisconsin*, 1974 WIS. L. REV. 1131.