BRENNAN, P.J.
*230 *191 ¶1 In this case we address whether, under the relevant statute and Wisconsin Administrative Code provisions, a residential care center (RCC) for minors is prohibited from strip searching[1] a resident regardless of the circumstances. The Department of Children and Families (DCF or the Department), which licenses such facilities, imposed a $500 forfeiture on Milwaukee Academy (M.A.) for allowing its staff to strip search a resident on June 18, *231 2014. DCF contended that under no circumstances was a strip search of a resident permitted. M.A. argues that the forfeiture is improper because the applicable statute and rules permit strip searches in certain circumstances that were present here.
¶2 We employ principles of statutory construction and construe the applicable provisions to achieve harmony between them and to avoid absurd results, and we apply due weight to the agency's interpretation of its own rule. We conclude that under the proper reading of the relevant provisions, in certain specific circumstances, a strip search of a resident is permitted. See WIS. ADMIN. CODE § DCF 52.31(1)(a) (Nov. 2017),[2] WIS. STAT. § 51.61 (2015-16),[3] and WIS. ADMIN. CODE § DHS 94.24(2)(d). We therefore reverse the agency's decision that a strip search is never permissible and vacate the forfeiture order. However, because the record is insufficient for this court to make the determination of whether the particular strip search here was permitted, we remand the matter to the Department for a hearing to determine whether this strip search was permitted under the statute and code provisions.
BACKGROUND
¶3 The Department made the following findings of fact.[4] The strip search for which DCF imposed the forfeiture took place at M.A., an RCC for girls ages ten *232 through seventeen. DCF licenses and regulates M.A. The children placed in the facility include victims of sexual abuse, subjects of CHIPS cases, children suffering emotional and behavioral disorders, those who need respite care, and those who have been adjudicated delinquent as a juvenile. J. was a resident of M.A. The record does not reflect the reason for J.'s placement.
¶4 J. had cut her arms with a piece of plastic and had been taken by sheriff's deputies to the hospital and then to the Milwaukee Mental Health Center (MMHC). A deputy returned J. to M.A. at about 12:40 p.m. on June 18, 2014. Because J. had previous episodes of creating weapons, the staff thought J. might have done so again.[5] When staff members tried to *192 confirm that she had no weapons hidden in her clothes, J. refused to talk and refused to cooperate.[6] J. was escorted to a "time out room," and four female staff members were present. J. kicked one staff member in the head. The staff members took J. to the floor using *233 a "team lateral restraint" and cut off some of her clothing. The staff then called for assistance from sheriff's deputies. A deputy returned, took J. to the hospital, and then, at 1:15 p.m., took J. to jail.
¶5 The following day, a staff member who was present prepared an internal report of the June 18 search that stated, "[s]taff were able to complete the body search but due to J. continuing to attempt to bite, kick, scratch and pinch, the nurse had to cut off her bras (she had two layers on) and shirt, and removed her pants." M.A. prepared and submitted a "Serious Incident Report" to DCF as required; it has conceded that "the resident was forcibly searched and her clothing was cut off[.]"
¶6 DCF sent a notice to M.A. on October 1, 2014, imposing a forfeiture. The stated basis for the forfeiture was that the June 18, 2014 search violated J.'s rights under WIS. ADMIN. CODE § DCF 52.31(1)(a), which guarantees "residents receiving treatment services ... rights that are comparable" to the patient rights under WIS. STAT. § 51.61 and WIS. ADMIN. CODE ch. DHS 94. DCF interpreted those patient rights as prohibiting strip searches.
¶7 M.A. petitioned the Department of Hearings and Appeals (DHA) for review of the forfeiture assessment. DHA dismissed the petition for review, concluding that the penalty was properly imposed because the June 18, 2014 search violated the resident's rights under WIS. ADMIN. CODE § DCF 52.31(1)(a). DHA stated that "[M.A.] basically conceded that strip search conduct by staff is not permitted under the residential care center for children licensing rules," and there is "no legal authority ... to grant any exception for 'extenuating circumstances' in a strip search of a resident in violation of ... § [DCF] 52.31(1)(a)." DHA
*234 acknowledged that the RCC director's decision to conduct the strip search to determine whether the resident had hidden a weapon in her bra was "understandable" given her past history of doing exactly that. It was undisputed that the resident had previously hidden a plastic eating utensil in her bra which she had then used in an attempt to cut herself. Nonetheless, DHA determined that under no circumstances was an RCC ever permitted to conduct a strip search, citing to § DCF 52.31(1)(a) and WIS. ADMIN. CODE ch. DHS 94 for authority. DHA also upheld the sanction, citing evidence that "a range of sanctions and penalties" had been considered, which proved DCF had exercised its discretion when it decided to impose the forfeiture.[7]
¶8 M.A. sought review of the Department's decision in the circuit court pursuant to WIS. STAT. § 227.57. The circuit court *193 noted that RCC residents receiving treatment services have "rights that are comparable" to patient rights under WIS. STAT. § 51.61 and WIS. ADMIN. CODE ch. DHS 94, and that under ch. DHS 94 inpatient rights do not include the absolute right to be free of strip searches. It reasoned that "[d]epending on the security needs and other circumstances of each kind of facility, [an RCC] resident's right to be free from strip-searches might be as limited as an inpatient's." Based on that conclusion, the circuit court set aside the Department's decision and remanded the dispute for further fact-finding on the security needs and other circumstances of RCC residents, as compared to those of "inpatients." On appeal, *235 DCF argues no remand is appropriate here because as a matter of law, M.A. had no authority to strip search a resident of an RCC under any circumstances.
STANDARD OF REVIEW
¶9 "Unless the court finds a ground for setting aside, modifying, remanding or ordering agency action ... it shall affirm the agency's action." WIS. STAT. § 227.57(2). If a court finds that the agency "has erroneously interpreted a provision of law and [that] a correct interpretation compels a particular action," it is to "set aside or modify the agency action" or "remand the case to the agency for further action under a correct interpretation of the provision of law." WIS. STAT. § 227.57(5).
¶10 In an appeal under WIS. STAT. ch. 227, we review the agency's decision,[8] not the decision of the circuit court. See Chicago & N. W. Transp. Co. v. Office of the Comm'r of R.R.s , 204 Wis. 2d 1, 7, 553 N.W.2d 845 (Ct. App. 1996). "Courts give lesser, 'due weight' deference when the agency is charged by the legislature with enforcement of the statute and has experience in the area, but has not developed expertise that necessarily places the agency in a better position than the court to interpret the statute." Milwaukee Symphony Orchestra, Inc. v. DOR , 2010 WI 33, ¶ 36, 324 Wis. 2d 68, 781 N.W.2d 674. "Courts applying 'due *236 weight' deference will sustain an agency's statutory interpretation if it is not contrary to the clear meaning of the statute and no more reasonable interpretation exists." Id. But courts will replace the agency's interpretation with a more reasonable interpretation if one exists. Id. Reviewing courts give no deference to an agency's statutory interpretation when the issue presents a matter of first impression, the agency has no experience relevant to the legal issue presented, or the agency's position on the issue has been so inconsistent as to provide no guidance. Id. , ¶ 37. The Wisconsin Supreme Court has previously observed that "in most situations, applying due weight deference will lead to the same result as would applying no deference at all." Jamerson v. DCF , 2013 WI 7, ¶ 46, 345 Wis. 2d 205, 824 N.W.2d 822 (citation omitted).
¶11 Interpretation of administrative rules is "subject to principles of statutory construction." Orion Flight Servs. v. Basler Flight Serv. , 2006 WI 51, ¶ 18, 290 Wis. 2d 421, 714 N.W.2d 130.
DISCUSSION
I. Due weight deference to the agency's interpretation is appropriate here.
¶12 Whether M.A. was authorized to conduct the strip search here requires *194 interpretation of: (1) the Department's own code provisions, especially WIS. ADMIN. CODE § DCF 52.31(1)(a) ; (2) the code provisions of the Department of Health Services, WIS. ADMIN. CODE ch. DHS 94; and (3) a statute, WIS. STAT. § 51.61(1)(m). The parties agree that the proper deference *237 to be given to DCF's interpretation of § DCF 52.31(1)(a) is the "due weight" or the "no deference" standard. In the words of DCF's brief, "[t]hat interpretation of the rule [§ DHS 94.24(2)(d) ] is subject to this Court's due weight deference because DCF has some authority to interpret and enforce the rule but has not developed expertise placing it in a position superior to this Court to interpret it."[9] The record does not reflect whether this is an issue of first impression for DCF, but because DCF concedes that it has limited expertise on the issue and does not claim any greater ability than this court to interpret the rules, we will apply due weight deference to our review of DCF's interpretation of § DCF 52.31(1)(a) here. Milwaukee Symphony Orchestra, Inc. , 324 Wis. 2d 68, ¶ 36, 781 N.W.2d 674. And as our supreme court has noted: "in most situations, applying due weight deference will lead to the same result as would applying no deference at all." Jamerson , 345 Wis. 2d 205, ¶ 46, 824 N.W.2d 822.
II. DCF's interpretation of WIS. ADMIN. CODE § DCF 52.31(1)(a) is that as a matter of law, an RCC resident can never be strip searched.
¶13 DCF found that M.A. violated WIS. ADMIN. CODE § DCF 52.31(1)(a) when it permitted a strip search of J. DHA affirmed DCF's interpretation of § DCF 52.31(1)(a) but gave no explanation of its analysis. Rather, the administrative law judge simply stated that a strip search of a resident was "never permitted." "[A] strip search of a resident by physically restraining the resident and cutting off the resident's clothes is never *238 permitted in a residential care center (RCC) under DCF 52 or DHS 94 in a Residential Care Center." (Emphasis added.)
¶14 DCF argues on appeal that a strip search of an RCC resident is never permissible, as a matter of law, based on its reading of WIS. ADMIN. CODE § DCF 52.31(1)(a), its cross-references to WIS. ADMIN. CODE ch. DHS 94, and WIS. STAT. § 51.61. M.A. counters that a strip search is permissible in extenuating circumstances like those here.[10] So the issue here is whether DCF's reading of § DCF 52.31(1)(a), WIS. STAT. § 51.61, and ch. DHS 94 is entitled to due deference by this court, or whether there is a more reasonable interpretation of the rules and statute. See Milwaukee Symphony Orchestra, Inc. , 324 Wis. 2d 68, ¶ 36, 781 N.W.2d 674. We first examine DCF's interpretation of the rules and statute more closely.
¶15 DCF's argument is based principally first, on the relationship between the word "patient" in WIS. ADMIN. CODE § DCF 52.31(1)(a) and the definitions of "patient" and "inpatient" in WIS. ADMIN. CODE § DHS 94.02 ; and second, on a description set *195 forth in WIS. ADMIN. CODE § DHS 94.24(2)(d) of what is and is not permissible with regard to strip searches. Section DCF 52.31(1)(a) specifically says that residents of an RCC "shall have rights that are comparable" to the patient rights listed in ch. DHS 94 and WIS. STAT. § 51.61 :
*239 Residents receiving services for a mental illness, alcohol or drug abuse or a developmental disability have the patient rights under s. 51.61, Stats., and ch. DHS 94 and shall have access to grievance resolution procedures that meet standards set out in subch. III of ch. DHS 94. Other residents receiving treatment services under this chapter who are not specifically identified as coming under s. 51.61, Stats., and ch. DHS 94 shall have rights that are comparable and access to grievance resolution procedures that are comparable.
§ DCF 52.31(1)(a).
¶16 There is no dispute that at the time of the June 18, 2014 search, under the DCF code, J. was a "resident" of M.A., which is a "residential care center" licensed and regulated by the State under WIS. STAT. § 48.60 and WIS. ADMIN. CODE ch. DCF 52.[11] Similarly there is no dispute that she was "receiving treatment services under this chapter." WIS. ADMIN. CODE § DCF 52.31(1)(a). Thus, there is no dispute that J.[12] was entitled to rights comparable to the patient rights *240 listed in WIS. STAT. § 51.61 and WIS. ADMIN. CODE ch. DHS 94. Rather, the dispute centers on what "comparable patient rights" means and whether, in giving J. the rights set forth in ch. DHS 94, § DCF 52.31(1)(a) also conveyed the limitations on those rights, namely the ability of an RCC under certain circumstances to conduct a strip search.
¶17 DCF contends that the comparable patient rights in WIS. ADMIN. CODE § DCF 52.31(1)(a) cannot include the rights of "inpatients" because by definition in WIS. ADMIN. CODE § DHS 94.02(23), an "inpatient" is a person in a facility licensed by DHS or the county. Here, DCF points out, J. was in a facility licensed by neither of those. Additionally, DCF argues that an "inpatient" must be an adult because the definition in § DHS 94.02(23)[13] does not say an inpatient can be a minor. J. was a minor. Finally, DCF argues that § DHS 94.24(2)(d) permits strip searches only of an "inpatient," so an RCC resident, who can never be an inpatient, can therefore never be strip searched.
*196 III. A "more reasonable" interpretation of the rules and statute exists, namely that WIS. ADMIN. CODE § DCF 52.31(1)(a) gives an RCC resident the rights set forth in ch. DHS 94 as well as the limitations on those rights.
¶18 We conclude that there is a more reasonable interpretation than DCF's interpretation for several *241 reasons. Having examined the DCF rule and its cross-references, we do not find textual support for the patient/inpatient distinction on which DCF's interpretation is based.
A. The DCF rule.
¶19 First, we note that a plain reading of WIS. ADMIN. CODE § DCF 52.31(1)(a) shows that the agency broadly granted to RCC residents the comparable rights listed in WIS. ADMIN. CODE ch. DHS 94 and WIS. STAT. § 51.61. It imposed no restrictions. It did not provide, although it could have, that none of the limitations in ch. DHS 94 applied to an RCC resident.
B. The cross-referenced statute.
¶20 Second, looking at the statute to which the DCF rule cross-references, WIS. STAT. § 51.61, we conclude that DCF's attempt to divide "patient rights" into two separate categories-"patient" and "inpatient"-fails because it is unsupported by the text. WIS. ADMIN. CODE § DCF 52.31(1)(a) makes no distinction between "patient" and "inpatient" rights. And the cross-referenced statute does not either. "[P]atient" means any individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency, including any individual who is admitted to a treatment facility. WIS. STAT. § 51.61(1) (emphasis added).
¶21 DCF argues that the statute omits any reference to "inpatient," and this shows that in WIS. ADMIN. CODE § DCF 52.31(1)(a), DCF meant to grant only the rights of a "patient," and not the rights of an "inpatient," to an RCC resident. The flaw in this argument is that the statute defines "patient" in terms that include an "inpatient"-a patient "admitted to " a *242 treatment facility. Therefore, we conclude that the patient rights statute demonstrates that the rights described therein apply to all patients: those "receiving services" and those "admitted to" a facility.[14]
C. The cross-referenced DHS rule.
¶22 DCF reads WIS. ADMIN. CODE ch. DHS 94 as distinguishing the rights of a "patient" from those of an "inpatient." DCF concludes that because their own agency's grant of "comparable patient rights" did not mention "inpatient," only the "patient" rights of ch. DHS 94 are granted to an RCC resident. We disagree with DCF's interpretation of the two rules.
¶23 We find no support in the title, structure, and context of WIS. ADMIN. CODE ch. DHS 94 for DCF's "separate sections" argument. Chapter 94 is entitled: "PATIENT RIGHTS AND RESOLUTION OF PATIENT GRIEVANCES." We note that the title itself makes clear it refers to patient rights without distinguishing patients from inpatients. The first and second sections of the chapter explain that it applies to all "patients receiving treatment for mental illness, a developmental disability, alcohol abuse or dependency or other drug abuse or dependency." WIS. ADMIN. CODE § DHS 94.01(1)
*197 (emphasis added). Neither section makes any mention of any separate applicability to "inpatients," further demonstrating that ch. DHS 94 draws no distinction between patients or inpatients .
¶24 It is not until we examine the definitional subsections in WIS. ADMIN. CODE § DHS 94.02 that we encounter distinctions between "patient" and "inpatient."
*243 But even then, the difference is slight and the argument academic. "Patient" is defined in § DHS 94.02(32) merely by cross-reference to the statute, WIS. STAT. § 51.61(1), which, as shown above, makes no mention of "inpatient" but does broadly grant "patient" rights to those "receiving services ... including any individual who is admitted " (emphasis added). This would include, under a common sense reading, individuals receiving services on an outpatient basis as well as those admitted for inpatient services.
¶25 DCF's principal WIS. ADMIN. CODE ch. DHS 94 argument-that the strip search provision in § DHS 94.24(2)(d) applies only to "inpatients" as defined in § DHS 94.02(23), thereby excluding an RCC resident-also fails upon close review. DCF has argued that there are two separate categories of rights set forth in § DHS 94.24(2)(d): (1) for "patients," to which an RCC resident would be entitled under WIS. ADMIN. CODE § DCF 52.31(1) and (2) for "inpatients," from which an RCC resident would be excluded by definition in § DHS 94.02(23) because an RCC resident is not an adult in a facility regulated by the Department or the county. From this, DCF contends that because the subsection permitting a strip search in § DHS 94.24(2)(d) mentions strip searches only with reference to "inpatients" and because an RCC resident is not by definition an "inpatient," an RCC resident can never be strip searched.
¶26 This argument fails. There are no separate sections. There is no distinction evident in the text between the rights of an inpatient and those of a patient. The terms "patient" and "inpatient" are interspersed throughout WIS. ADMIN. CODE § DHS 94.24(2)(d), which shows that there is no meaningful distinction. Section DHS 94.24(2)(d) states:
(d) Only inpatients may be subjected to a body search. All body searches shall be conducted as follows:
*244 1. A personal search of an inpatient may be conducted by any facility staff member:
a. Before a patient leaves or enters the security enclosure of maximum security units;
b. Before a patient is placed in seclusion;
c. When there is documented reason to believe the patient has, on his or her person, objects or materials which threaten the safety or security of patients or other persons ...
We note that the description of permissible body searches of an "inpatient" in § DHS 94.24(2)(d) specifically includes the word "patient" in the subsequent subsections of 1. a., b., and c. It is apparent that the two terms are interchangeable. The rule continues alternating between the use of "inpatient" and "patient" throughout § DHS 94.24(2) and (3). The only section that mentions "inpatients" specifically is, quite logically, section (4) which is a section addressing food service. An outpatient would not be provided food service. There is plainly no clear or meaningful distinction between the rights of a "patient" and an "inpatient" in § DHS 94.24(2)(d), contrary to DCF's argument.
¶27 Thus we conclude that the grant of comparable rights given by DCF in WIS. ADMIN. CODE § DCF 52.31(1)(a)
*198 encompasses all of the rights in WIS. ADMIN. CODE ch. DHS 94, including § DHS 94.24(2)(d) and all of the limitations on those rights, including permission to strip search an RCC resident under certain circumstances as listed there. When granting an RCC resident those comparable rights in ch. DHS 94, DCF did not specify only certain provisions. We are not to add words to § DCF 52.31(1)(a). Our goal is to seek the drafters' intent through the plain language and to *245 harmonize rules and statutes where necessary. We are to construe statutes and regulations to avoid absurd results. See Orion Flight Services , 290 Wis. 2d 421, ¶ 18, 714 N.W.2d 130.
¶28 We note that we do not find anything in DCF regulations that affirmatively states that a strip search of an RCC resident may never be done; if we did not find that the protections of WIS. ADMIN. CODE § DHS 94.24 apply to limit strip searches, it would produce the absurd result that minor residents of DCF-licensed facilities would be left without the protections and limitations on strip searches that are found in § DHS 94.24(2)(d). In order to find those protections for DCF-licensed facilities' residents, we must find them in § DHS 94.24(2)(d).
¶29 Because we conclude that this reading is a more reasonable interpretation of WIS. ADMIN. CODE § DCF 52.31(1)(a) than the Department's interpretation, we reverse the Department's order. See Jamerson , 345 Wis. 2d 205, ¶ 46, 824 N.W.2d 822.
IV. Further fact-finding is required in order to apply our interpretation to determine whether the June 18, 2014 search constituted a rule violation.
¶30 The record does not include the facts necessary for us to apply the interpretation of the DCF rule to this particular search. We therefore remand to the Department for further proceedings consistent with this opinion.
By the Court. -Order reversed and cause remanded with directions.

"Strip search" is defined in Wis. Admin. Code § DHS 94.02(43) as follows: "a search in which the patient is required to remove all of his or her clothing. Permissible inspection includes examination of the patient's clothing and body and visual inspection of his or her body cavities."

All references to the administrative codes are to the Wisconsin Administrative Register dated November 2017.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We refer to the Department's decision and the Administrative Law Judge's decision of October 12, 2015 interchangeably. In its briefing at the trial court, the Department adopted the ALJ's decision as the Department's final order. See Jamerson v. DCF , 2013 WI 7, ¶ 4 n.5, 345 Wis. 2d 205, 824 N.W.2d 822.

An M.A. staff member testified at the Department of Hearings and Appeals (DHA) hearing that a few days before the June 18 incident, J. had been transferred to MMHC. She told staff when she returned to M.A. that time that she had gotten something plastic from the MMHC cafeteria and "shoved it in her bra."

At the hearing, the facility's director testified about the procedure used to verify that a resident had no weapons:
Because we can't do body searches, we can't get in there, what we do is we can pat around a waist band and then we have the girls kind of lift and shake just in case there's objects and we have them do that in the timeout room so that it's private ... just as a safety precaution, that's the best we can do with the rules we have.

Pursuant to Wis. Stat. § 48.715(3)(a), DCF may impose a forfeiture on a licensee "who violates a provision of licensure under s. 48.70(1) or rule promulgated by the department under s. 48.658(4)(a) or 48.67[.]" M.A. does not challenge the amount of the forfeiture.

"The Department's decision" is the October 12, 2015 Letter and Decision. See Wis. Stat. § 48.72. ("Judicial review of the department's decision may be had by any party in the contested case as provided in ch. 227.") (emphasis added). See also Jamerson , 345 Wis. 2d 205, ¶ 4 n.5, 824 N.W.2d 822 (referring to the administrative law judge's order as "the Department's decision").

Each party relies on Milwaukee Symphony Orchestra, Inc. v. DOR , 2010 WI 33, ¶ 36, 324 Wis. 2d 68, 781 N.W.2d 674, to support its conclusion that due weight is appropriate here.

Both parties ask this court to decide whether, as a matter of law, a strip search is ever permitted. M.A. presents an alternative argument for affirmance of the circuit court's remand order. Because we review the agency's decision and conclude that it erred and that as a matter of law a strip search is sometimes permissible under Wis. Admin. Code § DCF 52.31(1)(a), Wis. Admin. Code § DHS 94.24(2)(d), and Wis. Stat. § 51.61(1)(m), we do not remand to the agency for the purposes set forth by the circuit court.

Both terms are defined in Wis. Admin. Code § DCF 52.03. " 'Resident' means a child who is admitted to and resides in a residential care center for children and youth." Wis. Admin. Code § DCF 52.03(22). " 'Residential care center,' 'center,' or 'RCC' means a residential facility required to be licensed as a child welfare agency ... that provides treatment and custodial services for children under 21 years of age." § DCF 52.03(23).

The record contains no evidence of whether J. was a "resident[ ] receiving services for a mental illness, alcohol or drug abuse or a developmental disability" or was a "resident[ ] receiving treatment services under this chapter who [is] not specifically identified as coming under s. 51.61, Stats., and ch. DHS 94[.]" Therefore, we, like the parties, will assume she falls in the category of "[o]ther residents" in Wis. Admin. Code § DCF 52.31(1)(a) and accordingly is entitled to "the rights that are comparable to" the rights of those "who are receiving services for a mental illness, alcohol or drug abuse or a developmental disability."

Wisconsin Admin. Code § DHS 94.02(23) defines "inpatient" as follows:
[A] person who is receiving treatment, care, services or supports while residing in an inpatient treatment facility, a residential treatment facility or in any facility or home which is subject to regulation as a place of residence and service provision for patients by the department, a county department or a county department of social services[.]

The type of rights described in Wis. Stat. § 51.61(1)(m) is the right of patients "to a humane psychological and physical environment within the hospital facilities[,]" which must be designed "to afford patients with comfort and safety, to promote dignity and ensure privacy." Wis. Stat. § 51.61(1)(m).